UNITED STATES of America,
Plaintiff-Appellee,

v.

Rosario Maxine Romero HERRERA,
Defendant-Appellant.

No. 78–5389.

United States Court of Appeals,
Fifth Circuit.

Aug. 8, 1979.

---

Lucien B. Campbell, Federal Public Defender, Harry Lee Hall, Asst. Federal Public Defender, El Paso, Tex., for defendant-appellant.

LeRoy Morgan Jahn, Asst. U. S. Atty., San Antonio, Tex., for plaintiff-appellee.

Before SIMPSON, TJOFLAT and HILL, Circuit Judges.

TJOFLAT, Circuit Judge:

Rosario Maxine Romero Herrera appeals her conviction on all four counts of an indictment charging the illegal transportation of aliens within the United States. 8 U.S.C. § 1324(a)(2) (1976).[1] Herrera contends that the district court committed reversible error by improperly restricting the evidence produced in support of her defense of duress and in excluding evidence that enhanced her credibility. We hold that the district court erred in refusing to admit probative testimony indicating duress. Herrera was deprived of a fair opportunity to present the defense, and we therefore reverse and remand the case for a new trial.

## I

On February 9, 1978, twenty-one-year-old Herrera was arrested in El Paso, Texas, while driving a vehicle containing illegal aliens. The indictment before us subsequently was returned. At her jury trial, Herrera sought to establish the defense of duress. She contended that she had been coerced into transporting the aliens by Eufemia Escamilla, a woman living in Albuquerque, New Mexico, who had associat-

---

1. 8 U.S.C. § 1324 (1976) provides:

(a) Any person, including the owner, operator, pilot, master, commanding officer, agent, or consignee of any means of transportation who—

(2) knowing that he is in the United States in violation of law, and knowing or having reasonable grounds to believe that his last entry into the United States occurred less than three years prior thereto, transports, or moves, or attempts to transport or move, within the United States by means of transportation or otherwise, in furtherance of such violation of law;

any alien . . . not duly admitted by an immigration officer or not lawfully entitled to enter or reside within the United States under the terms of this chapter or any other law relating to the immigration or expulsion of aliens, shall be guilty of a felony, and upon conviction thereof [shall be fined and/or imprisoned.] . . ..

ed Herrera in smuggling aliens through El Paso the previous October. Herrera explained that during a February 7, 1978, telephone conversation, Escamilla had ordered her to go to El Paso to pick up the illegal aliens; she went solely because she was afraid of what Escamilla might do to her and her two small children. At an earlier time (date not established), Escamilla had cut Herrera on the face and hands with a knife, and these scars were exhibited to the jury.

Though the trial court permitted Herrera to tell the jury that she had been threatened by Escamilla into transporting the aliens, it would not allow Herrera to relate to the jury the contents of the February 7 telephone conversation with Escamilla. In the absence of the jury, Herrera proffered that Escamilla told her to pick up some people in El Paso; if she didn't, she would have her "ass kicked." Record, vol. 2, at 144. Escamilla also said, "What I have done to you is nothing compared to what I could do." *Id.* Escamilla claimed to have friends in El Paso, Juarez, and Albuquerque who also could carry out her threats. *Id.* at 145. This proffer was excluded as hearsay.

The trial court also excluded Herrera's testimony about a beating that she received on March 9, 1978, on the way to the bus station in Albuquerque, when she was going to El Paso for her arraignment in this case. Two men and a woman beat her, took her purse and said she "was going to get it" if she said anything against Escamilla in court. *Id.* at 139. A photograph evidencing the beating likewise was excluded. Finally, Herrera offered the record of Escamilla's earlier conviction on a charge of illegally transporting aliens to corroborate Herrera's testimony that Escamilla was in the alien smuggling business.

Despite the exclusion of much of the evidence offered to show Herrera's coerced state of mind, the trial court instructed the jury on the defense of duress. *Id.* at 197–99. The defense clearly was rejected by the jury finding guilt on all four counts.

## II

Herrera contends that the district court committed reversible error in preventing her from relating the contents of her telephone conversation with Escamilla. Although determinations of the admissibility of evidence lie largely within the discretion of the trial court, *United States v. Cohen*, 544 F.2d 781, 786 (5th Cir.), *cert. denied*, 431 U.S. 914, 97 S.Ct. 2175, 53 L.Ed.2d 224 (1977); *United States v. Linetsky*, 533 F.2d 192, 204 (5th Cir. 1976), here the exclusion of the telephone conversation was improper. The trial court treated the conversation as hearsay. Record, vol. 2, at 135, 145. It was not hearsay, however, because it was not offered for the truth of the matter asserted. Fed.R.Evid. 801(c). The threatening statements made by Escamilla during the conversation were not offered to prove that Escamilla would actually carry through the threats, but rather to show Herrera's state of mind in consequence of the statements. The trial court instructed the jury on the duress defense; therefore, the jury was entitled to consider Escamilla's statements and Herrera's reaction to them in resolving the issue of criminal intent. *See United States v. Wellendorf*, 574 F.2d 1289, 1290 (5th Cir. 1978); *United States v. Carter*, 491 F.2d 625, 629–30 (5th Cir. 1974); 4 J. Weinstein & M. Berger, *Weinstein's Evidence* § 801(c)[01], at 801–62, –63 (1978).

The Government argues that we should uphold the convictions on the ground that the excluded evidence was irrelevant. It is said to be irrelevant because on the record as a whole, considering the excluded evidence along with that which was admitted, Herrera failed, as a matter of law, to make out a defense of duress. That defense, the Government submits, cannot be established unless it is proven that coercion was present and immediate, that the defendant's fear of serious bodily injury was well-founded, and that no reasonable opportunity for escape was available. *United States v. Gordon*, 526 F.2d 406, 407 (9th Cir. 1975). Here, it is argued, the requisite immediacy and unavoidability were not present. *See United States v. Furr*, 528 F.2d 578, 580 (5th Cir. 1976).

■ Although Herrera's proffer of evidence (the conversation with Escamilla), considered with the other evidence bearing on the defense, does not remove all doubt that she could have proven every element of duress, we cannot foreclose the defense of duress in this case. The trial court evidently felt that a prima facie showing of the defense had been presented, since it instructed the jury that duress was a defense to the charges. Yet the defendant was precluded from establishing the very heart of the defense—the threats that allegedly produced the coerced state of mind. In our view, this dual ruling by the trial court, withholding the evidence of coercion while instructing the jury to take Herrera's claim of coercion into account, denied the defendant a fair trial. Herrera is entitled to a new trial and an opportunity to present her defense.

## III

Herrera contends that the district court similarly committed reversible error by excluding both evidence concerning her beating a month after her arrest and the record of Escamilla's conviction for transporting aliens. This evidence, it is urged, corroborates the defense of duress and Herrera's credibility.

■ Evidence of a "systematic campaign of threats and intimidation" may be admissible under Fed.R.Evid. 404(b)[2] to support a defendant's defense of duress, even where the coercion continues after the conduct for which the defendant is on trial. *United States v. McClure*, 546 F.2d 670 (5th Cir. 1977). Because we set aside Herrera's convictions on her first claim of error, we need not determine whether the exclusion of the evidence on the beating was error. Though on retrial it cannot be known precisely how

the duress defense will be presented, rule 404(b) should be borne in mind.

■ As for the evidence of Escamilla's conviction, it was offered merely to corroborate Herrera's statement that Escamilla was an alien smuggler. Its admissibility in a new trial will depend, of course, on the extent to which Herrera's testimony on this point is called into question and an assessment of the factors set out in Fed.R.Evid. 403.[3] *Cf. United States v. Beechum*, 582 F.2d 898 (5th Cir. 1978) (en banc).

The judgment of the district court is reversed and the cause remanded for a new trial.

REVERSED AND REMANDED.

---

**2.** Fed.R.Evid. 404(b) provides:

Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

**3.** Fed.R.Evid. 403 states:

Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.