UNITED STATES of America,
Plaintiff-Appellee,

v.

Milton R. WASMAN,
Defendant-Appellant.

No. 81–5886.

United States Court of Appeals,
Eleventh Circuit.

March 17, 1983.

**664**

Jay R. Moskowitz, Sands & Moskowitz, Miami, Fla., for defendant-appellant.

Patty Merkamp Stemler, Appellate Sect., Crim. Div., Dept. of Justice, Washington, D.C., for plaintiff-appellee.

Before FAY and CLARK, Circuit Judges, and MARKEY *, Chief Judge.

MARKEY, Chief Judge:

Milton R. Wasman (Wasman) appeals his conviction by a jury in the United States District Court for the Southern District of Florida of knowingly and willfully making false statements in a passport application in violation of 18 U.S.C. § 1542.[1] He asserts procedural errors, judicial bias, and a sentence enhancement violative of due process. We affirm.

---

\* Honorable Howard T. Markey, Chief Judge for the Federal Circuit, sitting by designation.

1. 18 U.S.C. § 1542 provides:
 False statement in application and use of passport
 Whoever willfully and knowingly makes any false statement in an application for passport with intent to induce or secure the issuance of a passport under the authority of the United States, either for his own use or the use of another, contrary to the laws regulating the issuance of passports or the rules prescribed pursuant to such laws; or
 Whoever willfully and knowingly uses or attempts to use, or furnishes to another for use any passport the issue of which was secured in any way by reason of any false statement—
 Shall be fined not more than $2,000 or imprisoned not more than five years, or both.

## Background

At a first trial in September 1979, the government showed that in March 1978 Wasman applied for and obtained a passport in the name of his deceased law school classmate, David Hendrick. Wasman did not dispute that showing, but attempted to introduce evidence that his purpose was to employ a non-Semitic name in business dealings with Arab investors.[2] The district court excluded that evidence as irrelevant. The jury convicted and Wasman was sentenced to two years incarceration, six months to be spent in confinement, the balance suspended in favor of three years probation.

Wasman appealed, urging that he had legally assumed the name "Hendrick," and asserting error in the refusal to admit evidence of his purpose. Holding that evidence admissible as indicative of circumstances surrounding Wasman's assumed-name defense, the court reversed and remanded for a new trial. *United States v. Wasman*, 641 F.2d 326 (5th Cir.1981).

At the second trial, and to show that Wasman had not assumed a new name but had continued to use "Wasman", the government showed that in May 1978 he applied as "Wasman" for a duplicate driver's license, stating on the application that the original had been stolen.

Wasman testified that in February 1978 he met in London with Ronnie Comninos and Andrew Connolly, who allegedly represented Arabs interested in Florida real estate, and who advised him to secure identification under a non-Semitic name. The court excluded testimony directly quoting that advice as hearsay, but permitted testimony on the general nature of the discussions.

Wasman also sought to show that Comninos and Connolly kidnapped him in Spain in March 1978; that they stole his driver's license and the "Hendrick" passport; and that he had traveled back to the United States under his "Wasman" passport. The district court excluded that evidence as irrelevant.

Wasman was again convicted of violating 18 U.S.C. § 1542 and was sentenced to two years confinement. The court explained that it was enhancing the sentence in view of Wasman's interim conviction on a plea of nolo contendere to a charge of possession of counterfeit certificates of deposit.

## Issues

(1) Whether it was error to exclude: (a) evidence of kidnapping; (b) testimony quoting advice of Comninos and Connolly. (2) Whether the trial court was biased against Wasman. (3) Whether the sentence enhancement violated Wasman's due process rights.

## OPINION

(1) *Exclusion of Evidence*

(a) *Kidnapping*

 Judge Roettger properly rejected as irrelevant Wasman's effort to show kidnapping and theft of his driver's license by Comninos and Connolly in Spain. Proof of those facts, if facts they be, would bear no relation to the charge of making false statements in an earlier passport application.[3]

Wasman says he "had a right to show the jury that he was telling the truth when he stated in his application for a duplicate license that the original had been stolen." The veracity of that statement, however, was never challenged. Thus Wasman's assertion that failure to admit evidence of a truthful application would leave the jury with an impression that he was prone to mislead when applying for various forms of identification is speculative and unfounded.

---

**2.** The government also showed that other entries on the application were false (date and place of birth, marital status, etc.). Wasman does not dispute the falsity of those entries, but attempts to excuse them as designed to achieve the same mislead-the-Arabs purpose.

**3.** Beyond the inherent irrelevance of the allegations, their proffer appears disingenuous in light of Wasman's having filed his false passport application *before* the date on which the license and the false passport were allegedly stolen.

#### (b) *Advice of Comninos and Connolly*

 Relying on *U.S. v. Herrera*, 600 F.2d 502 (5th Cir.1979), Wasman says testimony precisely quoting Comninos' and Connolly's advice was offered not to prove the truth of the matter asserted but to show his state of mind, and on that basis the testimony should have been admitted. Appellant in *Herrera*, however, asserted a coercion defense to which the exact language of certain threats was critical. Connolly's and Comnino's exact statements are not critical here, where Wasman asserts neither threat nor coercion.

If there were error in refusing to allow direct quotation, it must be viewed as harmless. Wasman was permitted to paraphrase in detail his conversations with Comninos and Connolly, and to convey to the jury his alleged motivation in entering a false name on his passport application.

#### (2) *Bias*

Wasman says the trial judge made comments reflecting bias against him and entitling him to a new trial before a different judge. The assertion is without merit.

 Wasman cites as indicative of bias the same evidentiary rulings he challenged on their merits. As indicated above, however, those rulings were correct and harmless. Without more, a judge cannot be charged with bias for having made evidentiary rulings. Nor, as set forth below, was the enhanced sentence indicative of bias, prejudice, or vindictiveness.

Judge Roettger's post-verdict comments to the jury concerning the background (i.e., the first trial and appeal) of the case and the evidentiary questions involved, did not in the slightest reflect personal bias or animosity toward Wasman. Significantly, Wasman cites no pre-verdict statement to the jurors that would or might have influenced their impartiality.

There is on this record no basis whatsoever for inferring bias or prejudice of any kind against Wasman.

#### (3) *Sentence Enhancement*

The fact pattern out of which this issue rises is one of first impression in this circuit.

Wasman says enhancement of his sentence violated his right to due process, citing *North Carolina v. Pearce*, 395 U.S. 711, 89 S.Ct. 2072, 23 L.Ed.2d 656 (1969). In *Pearce* the Court said a judge may enhance the sentence of a reconvicted defendant who had successfully attacked a first conviction, but went on to state a constitutional limitation on that authority: "Due process of law, then, requires that vindictiveness against a defendant for having successfully attacked his first conviction must play no part in the sentence he receives after a new trial." *Id.*, at 725, 89 S.Ct., at 2080. Thereafter, "to assure the absence of such a motivation," the Court fashioned a procedural guideline:

> [W]henever a judge imposes a more severe sentence upon a defendant after a new trial, the reasons for his doing so must affirmatively appear. Those reasons must be based upon objective information concerning identifiable conduct on the part of the defendant occurring after the time of the original sentencing proceeding. And the factual data upon which the increased sentence is based must be made part of the record, so that the constitutional legitimacy of the increased sentence may be fully reviewed on appeal.

*Id.*, at 726, 89 S.Ct., at 2081.

In *Pearce*, the constitutional considerations of concern had their genesis not only in the possibility of judicial vindictiveness, but in the possibility of a prohibiting perception on the part of those convicted, i.e., that a successful appeal might itself be the cause for sentence enhancement on re-conviction. 395 U.S. at 724, 725, 89 S.Ct. at 2080. Having identified vindictiveness and its inhibiting potential as phenomena to be avoided, the Court elected to supply the quoted guidelines as a means to that end.[4]

---

**4.** Prompting Justice Black to say, at 395 U.S. 740, 741, 89 S.Ct. 2083:

Of course nothing in the Due Process Clause grants this Court any such power as it is

■ Judge Roettger followed precisely the procedural steps of *Pearce,* affirmatively stating on the record his reason for enhancing the sentence, basing that reason on objective information concerning identifiable conduct of the defendant, and making the factual data on which his action was based part of the record so that its constitutional legitimacy may be fully reviewed on appeal:

> THE COURT: I would like to have you address particularly the fact that there's been an intervening conviction between the first trial and the second trial. And I do think that is a matter that the Court should take into consideration in determining sentence to be imposed at this time. And I would like to have you address that. And that, of course, is a matter that was before Judge Davis'—
>
> MR. MOSKOWITZ: Be happy to.
>
> THE COURT:—Presentence Report.
>
> \* \* \* \* \* \*
>
> THE COURT: However, I make it always very clear that I do not consider pending charges in considering what sentence I impose. Therefore, when I imposed sentence the first time, the only conviction on Mr. Wasman's record in this

Court's eyes, this Court's consideration, was failure to file income tax returns, nothing else. I do not consider then and I don't in other cases either, pending matters because that would result in a pyramiding of sentences. At this time he comes before me with two convictions. Last time, he came before me with one conviction.

Because Wasman's interim conviction was for an offense committed before his first trial, he focuses on the phrase "conduct ... occurring after the time of the original sentencing" in *Pearce,* saying it prohibits consideration of that offense as a basis for sentence enhancement.

Wasman's argument concerns but a part of the means, and ignores the end sought to be achieved in *Pearce.* It exalts words above substance. For those reasons, the argument is not persuasive. Moreover, a rigid limitation of increased sentences to those based on misconduct occurring after the first sentencing would needlessly erase relevant information from the sentencing slate, while contributing nothing to the goal of avoiding vindictiveness. An intervening conviction adds a new dimension to the data before a sentencing judge who had disre-

---

using here. Punishment based on the impermissible motivation described by the Court is, as I have said, clearly unconstitutional, and courts must of course set aside the punishment if they find, by the normal judicial process of fact-finding, that such a motivation exists. But, beyond this, the courts are not vested with any general power to prescribe particular devices "[i]n order to assure the absence of such a motivation." Numerous different mechanisms could be thought of, any one of which would serve this function. Yet the Court does not explain why the particular detailed procedure spelled out in this case is *constitutionally* required, while other remedial devices are not. This is pure legislation if there ever was legislation. (Emphasis in original)

and at 395 U.S. 742, 89 S.Ct. 2084:

The danger of improper motivation is of course ever present. A judge *might* impose a specially severe penalty solely because of a defendant's race, religion, or political views. He *might* impose a specially severe penalty because a defendant exercised his right to counsel, or insisted on a trial by jury, or even

because the defendant refused to admit his guilt and insisted on any particular kind of trial. In all these instances any additional punishment would of course be, for the reasons I have stated, flagrantly unconstitutional. But it has never previously been suggested by this Court that "[i]n order to assure the absence of such a motivation," this Court could, as a matter of constitutional law, direct all trial judges to spell out in detail their reasons for setting a particular sentence, making their reasons "affirmatively appear," and basing these reasons on "objective information concerning identifiable conduct." Nor has this Court ever previously suggested in connection with sentencing that "the factual data ... must be made part of the record." On the contrary, we spell out in some detail in *Williams v. New York,* 337 U.S. 241 [69 S.Ct. 1079, 93 L.Ed. 1337] (1949), our reasons for refusing to subject the sentencing process to any such limitations, and the Court has, until today, continued to reaffirm that decision. See, *e.g., Specht v. Patterson,* 386 U.S. 605 [87 S.Ct. 1209, 18 L.Ed.2d 326] (1967). (Emphasis in original)

garded charges merely pending at the time of an earlier sentencing hearing. When, as here, the effect of an intervening conviction is to convert what had been considered a legal nullity for sentencing purposes, i.e., a mere accusation, into a fact fully relevant to sentencing, i.e., that defendant had committed an additional crime, a sentence enhancement based on that additional conviction does not impede the goals outlined in *Pearce*.[5]

■ The thrust of *Pearce* is that increased punishment after appeal and reconviction violates a defendant's due process rights when it results from judicial vindictiveness. In setting forth its guidelines the Court's express objective was to assure absence of such retaliatory motivation. Reading the Court's *Pearce* opinion in its entirety and in light of the facts of that case, as we must, *Armour & Co. v. Wantock*, 323 U.S. 126, 132, 133, 65 S.Ct. 165, 168, 169, 89 L.Ed. 118 (1944), convinces us that increased sentences are not thereby limited to instances in which a defendant has committed an offense after the first trial.[6] The

target in *Pearce* was vindictive sentencing, not defendant misbehavior between trials. No reason exists for applying a phrase in the *Pearce* guidelines to circumstances bearing no relation to the purpose of those guidelines. There is on this record no evidence whatsoever that the enhancement here resulted from vindictiveness of Judge Roettger. Nor does Wasman argue that it did. In such circumstances, an increased sentence neither thwarts the purpose of *Pearce* and its guidelines nor offends constitutional due process considerations.

The view here expressed is consonant with the Supreme Court's treatment of *Pearce* as unequivocally directed to and only to the hazard of vindictiveness. In *Moon v. Maryland*, 398 U.S. 319, 90 S.Ct. 1730, 26 L.Ed.2d 262 (1970), the Court dismissed a writ of certiorari as improvidently granted because Moon did not allege that his increased sentence was motivated by vindictiveness. *Id.* at 320, 90 S.Ct. at 1730–31. In *Colten v. Kentucky*, 407 U.S. 104, 92 S.Ct. 1953, 32 L.Ed.2d 584 (1972), the Court

---

**5.** Though 18 U.S.C. § 3577 provides that "No limitation shall be placed on the information ... a court ... may ... consider ..." in sentencing, a strong rationale supports Judge Roettger's stated practice of ignoring pending charges. Beyond his concern for "pyramiding" sentences, a mere accusation does not establish that the charged conduct was that of the defendant. If our "innocent till proven guilty" jurisprudence means anything, it must mean that punishment may not be meted out for conduct not established as that of the defendant.

We need not, and therefore do not, here decide whether unproven charges must be invisible on a defendant's legal slate at sentencing. Whether consideration of a mere accusation in setting a sentence would accord with due process must await determination in a case squarely presenting the issue.

**6.** In *Pearce*, the involved States offered *no* reason for increasing the sentences of Rice or Pearce. 395 U.S. at 726, 89 S.Ct. at 2081. The court had no occasion therefore to consider the propriety of basing an increased sentence on an intervening conviction for an offense committed before a first sentencing. Further, the majority opinion in *Pearce* contains language in direct conflict with Wasman's position. In dealing with an Equal Protection argument, the Court said, "A man who is retried after his first conviction has been set aside may be acquitted.

If convicted, he may receive a shorter sentence, he may receive the same sentence, or he may receive a longer sentence than the one originally imposed. The result may depend upon a particular combination of infinite variables peculiar to each individual trial." 395 U.S. at 722, 89 S.Ct. at 2079. At another point, the court quoted with approval from *Williams v. New York*, 337 U.S. 241, 245, 69 S.Ct. 1079, 1082, 93 L.Ed. 1337 (1949), saying, "A trial judge is not constitutionally precluded, in other words, from imposing a new sentence, whether greater or less than the original sentence, in the light of *events* subsequent to the first trial that may have thrown new light upon the defendant's 'life, health, habits, conduct, and mental and moral propensities' ". 395 U.S. at 723, 89 S.Ct. at 2079 (Emphasis added). A conviction is, of course, an "event". Though immediately thereafter and in its guidelines the Court referred respectively to defendant's conduct "subsequent to the first conviction" and "occurring after the first sentencing," it would appear that those phrases rested on an assumption that all conduct occurring before the first conviction and sentencing had been considered or somehow merged in setting the first sentence. The assumption is inapplicable where, as here, the earlier conduct was ignored until it became legally attributable to the defendant.

explained that *Pearce* did not bar an increased sentence after a de novo trial because the "possibility of vindictiveness, found to exist in *Pearce,* is not inherent in the Kentucky two-tier system." *Id.* at 116, 92 S.Ct. at 1960. In *Chaffin v. Stynchcombe,* 412 U.S. 17, 93 S.Ct. 1977, 36 L.Ed.2d 714 (1972), in the course of considering whether imposition of an increased sentence by a jury upon retrial violates due process, the Court said:

> [Pearce] was premised on the apparent need to guard against *vindictiveness* in the resentencing process. *Pearce* was not written with a view to protecting against the mere possibility that, once the slate is wiped clean and the prosecution begins anew, a fresh sentence may be higher for some valid reason associated with the need for flexibility and discretion in the sentencing process. The possibility of a higher sentence was recognized and accepted as a legitimate concomitant of the retrial process. [Emphasis in original]

*Id.,* at 25, 93 S.Ct., at 1982.

■ In sum, "[t]he lesson that emerges from *Pearce,* [*Moon*], *Colten* and *Chaffin* is that the Due Process Clause is not offended by all possibilities of increased punishment upon retrial after appeal, but only by those that pose a realistic likelihood of 'vindictiveness'". *Blackledge v. Perry,* 417 U.S. 21, 27, 94 S.Ct. 2098, 2102, 40 L.Ed.2d 628 (1974).

Thus the post-*Pearce* guidance supplied by the Court makes clear that where, as here, the record establishes a total absence of any "realistic likelihood" of vindictiveness, an increased sentence does not offend the Due Process Clause.

Wasman cites *United States v. Markus,* 603 F.2d 409 (2d Cir.1979) and *United States v. Williams,* 651 F.2d 644 (9th Cir.

1981). In *Markus,* the court said, "[i]ntervening convictions ... based on indictments pending at the time of the original sentencing ... and upon conduct predating that sentencing, cannot satisfy *Pearce*'s exacting requirement". 603 F.2d at 414. The Ninth Circuit's view expressed in *Williams* is substantially identical to that expressed in *Markus.*[7]

■ The later Supreme Court opinions explaining *Pearce* were not discussed in either *Markus* or *Williams.* We decline to adopt the approach taken by our sister circuits in *Markus* and *Williams* because, in our view, that approach separates a suggested procedure for avoiding a result from the result sought to be avoided. It grants an independent status to the words "conduct ... occurring after ...", while disregarding their relationship, if any, to the avoidance of vindictiveness. Adoption of that approach, moreover, would have only two possible consequences, neither likely to be of service to the governing constitutional considerations in *Pearce.* One consequence would be a requirement that an offense merely charged at the time of first sentencing be considered in setting that first sentence. The alternative would be total immunization of the predating offense from consideration at any time. We think the better course lies in recognizing that when offenses the subject of charges then merely pending are totally disregarded at original sentencing, those offenses may be considered on the record at second sentencing when convictions on those offenses have occurred in the interim. Nothing in that course would appear to us to impede, even peripherally, the thrust of *Pearce,* i.e., avoidance of sentence enhancement based on vindictiveness, real or apparent, for success on appeal.[8]

---

**7.** In *Williams,* the indictment on which the intervening conviction was based occurred after the original sentencing.

**8.** Wasman points to Justice White's one-sentence concurrence in *Pearce,* 395 U.S. at 751, 89 S.Ct. at 2089, in which he suggested that an increased sentence should be baseable on "any objective, identifiable, factual data not known

to the trial judge" at original sentencing, and to the Ninth Circuit's thought, expressed in *Williams,* that Justice White would have had no cause to write separately if *Pearce* would permit an increase based on an intervening conviction. None of the five opinions filed in *Pearce* discussed the present fact pattern, nor is there indication that its ramifications were specifically considered by any of the five writers. We

The desire to have and simultaneously eat one's cake is understandable; but catering in the courtroom to that desire can produce only annoying anomalies in the law. This case is illustrative. Wasman specifically requested at his first sentencing hearing that the offense for which a charge was then pending be disregarded because he had not had an opportunity to disprove the charge. Judge Roettger, in accord with his announced practice, granted that request. Now, after conviction for that same offense, Wasman again says it should continue to be disregarded, this time because the critical date should be that of the offense. As indicated above, the argument is unavailing.

In all of the circumstances, we hold that Wasman's increased sentence was in this case proper, that it was based on objective, factual new evidence not previously considered, that it was neither motivated by judicial vindictiveness nor reasonably perceivable as having been so motivated, and that it did not therefore infringe Wasman's right to due process.

### Conclusion

No error occurred in refusing the evidence of kidnapping and quotation of Comninos and Connally. Nothing of record remotely indicates bias or prejudice against Wasman. The enhancement of Wasman's sentence in view of his intervening conviction was not violative of Wasman's due process rights. Accordingly, we affirm.

The conviction is AFFIRMED.

are content to rest our decision therefore on the practicalities of the actual events reflected in the present record, declining surmise respect-

ing what might have been the thought processes of individual Justices if the record in *Pearce* had corresponded to that now before us.