**UNITED STATES of America,**
**Plaintiff-Appellee,**

v.

**Thomas D. GAERTNER,**
**Defendant-Appellant.**

No. 81–2725.

United States Court of Appeals,
Seventh Circuit.

Argued Dec. 9, 1982.

.Decided April 8, 1983.

As Amended June 9, 1983.

Rehearing and Rehearing En Banc
Denied July 13, 1983.

Kenneth N. Flaxman, Chicago, Ill., for defendant-appellant.

Patricia J. Gorence, Asst. U.S. Atty., Milwaukee, Wis., Lawrence O. Anderson, U.S. Atty., for plaintiff-appellee.

Before BAUER and COFFEY, Circuit Judges, and HOFFMAN,* Senior District Judge.

COFFEY, Circuit Judge.

The defendant, Thomas D. Gaertner, appeals from his judgment of conviction for possession with the intent to distribute a schedule II controlled substance (cocaine) in violation of 21 U.S.C. § 841(a)(1). The defendant alleges that the district court erred (1) in refusing to suppress evidence obtained during a search of the defendant's automobile; (2) in ruling that statements made by a government informant were hearsay; (3) in allowing the prosecution to cross-examine the defendant about his prior drug convictions; (4) in denying his request to present surrebuttal testimony; and (5) in sentencing. Affirmed.

The defendant was arrested by federal agents as the result of a Drug Enforcement Administration undercover operation. Subsequently, government agents searched the defendant's car after his arrest based upon a magistrate issued search warrant, and uncovered approximately four ounces of cocaine. Thereafter, the defendant was indicted for the possession of cocaine with the intent to deliver in violation of 21 U.S.C. § 841. The trial court denied the defendant's pre-trial motion to suppress the cocaine on the grounds that the affidavit presented to the magistrate in support of the issuance of the search warrant did not contain material misstatements of fact, as alleged by Gaertner. *See United States v. Gaertner,* 519 F.Supp. 585 (E.D.Wis.1981). During the defendant's jury trial, the government presented evidence demonstrating that at the time of his arrest Gaertner was, in fact, in the process of delivering the cocaine from his car to an undercover government agent, Brian Maas. The defendant freely admitted possessing the cocaine, but denied that he intended to deliver it to Agent Maas; he contended that he was holding the cocaine as collateral for a loan he had made to William Haman, a government informant. Upon the jury's finding of guilt, the trial judge sentenced the defendant to a twelve-year term of imprisonment and a special parole term of six years.

## SEARCH WARRANT

At noon on May 19, 1981 the defendant arranged to meet Agent Maas and William Haman in a Milwaukee restaurant to consummate a drug transaction the men had negotiated the preceding day. Federal

---

* The Honorable Walter E. Hoffman, Senior District Judge for the Eastern District of Virginia, is sitting by designation.

agents assigned to monitor this meeting observed the defendant and Haman leave the restaurant in the company of each other and proceed to Gaertner's automobile. After Gaertner and Haman conferred inside the auto, the defendant was observed placing a gym bag into his car trunk. At this time, acting upon a prearranged signal by Haman, federal agents arrested the defendant. Based on information he had received and believing that the gym bag the defendant placed into the trunk of his auto contained cocaine, a DEA Special Agent applied for a search warrant from a magistrate with his affidavit containing the following paragraph:

"Your affiant further states upon information and belief and upon statements made to him by Special Agent Brian Maas of the Drug Enforcement Administration that Agent Maas arrived at the above-described Big Boy Restaurant at approximately 11:45 a.m. May 19, 1981 in the company of the above-described confidential informant. Agent Maas states that he then met with the person known to him as Thomas Gaertner at about 12:10 p.m. May 19, 1981 inside the Big Boy Restaurant. Agent Maas states that he asked Mr. Gaertner about purchasing approximately eight ounces of cocaine and that this purchase had been discussed prior to this meeting with Mr. Gaertner. Mr. Gaertner advised Agent Maas that the confidential informant could go along with him to inspect the cocaine which was the subject of their transaction."

The defendant Gaertner asserts on appeal that the testimony at trial established that the affidavit contained material misstatements of fact in that the defendant had not told Agent Maas that the confidential informant could accompany him, and further, that Agent Maas testified at trial that he had not previously discussed the purchase of eight ounces of cocaine with the defendant. Gaertner contends that in light of this testimony the court should have granted his motion to suppress the cocaine as the affidavit contained material misstatements of fact.

When challenging a search warrant on the grounds that the underlying affidavit contains material misstatements of fact, the defendant must establish by a preponderance of the evidence that the statements contained in the affidavit were indeed false and were intentionally included by the affiant, or with reckless disregard for the truth, and that if the false statements had not been recited in the affidavit, the magistrate would have been unable to find the probable cause necessary for the issuance of the search warrant. *Franks v. Delaware,* 438 U.S. 154, 155–56, 98 S.Ct. 2674, 2676, 57 L.Ed.2d 667 (1978). Furthermore, affidavits supporting search warrants must be read in a common sense fashion and not in a nitpicking, hypertechnical manner. *United States v. Ventresca,* 380 U.S. 102, 85 S.Ct. 741, 13 L.Ed.2d 684 (1965). It is the defendant's contention that the affidavit contains statements attributed to Maas which were not supported by Maas' testimony at trial. For example, Gaertner asserts that Agent Maas failed to support the statement in the affidavit that he asked Gaertner about purchasing approximately eight ounces of cocaine and that "this purchase had been discussed prior to this [May 19th] meeting with Mr. Gaertner." Contrary to the defendant's position, Agent Maas' testimony at trial when reviewed in its entirety substantially supports the accuracy of the information contained in the affidavit. Initially, it should be noted that Maas was never specifically asked by either the prosecution or the defense whether he had previously discussed the purchase of eight ounces of cocaine with the defendant. However, in response to the government's questions Agent Maas did testify that the first time he met with the defendant was on May 18th in the barroom of a Milwaukee restaurant/tavern and at that time he attempted to convince the defendant that he (Maas) was a major dealer in cocaine capable of handling multi-kilo quantities. The agent told the defendant that he had been in the cocaine business in the past and was anticipating reestablishing a large scale cocaine business in the Milwaukee area. The agent further related that the defendant

Gaertner informed him that he would sell Maas *large quantities* of cocaine in the future, that Haman would have to be present during the future transactions and he (Agent Maas) would have to be satisfied with the quality of the cocaine "the first time," (i.e. the transaction which the parties intended to complete the next day). The above testimony of Agent Maas is more than sufficient to support the accuracy of the statements contained in the affidavit; while the agent did not testify that specific quantities of cocaine were discussed, Maas' testimony clearly establishes that Gaertner agreed to provide the agent with large quantities of cocaine and that the second (May 19th) meeting between the defendant and Agent Maas arose out of and after their initial May 18th discussion. Therefore, we hold that the statement in the affidavit concerning whether Agent Maas had asked Gaertner about purchasing cocaine prior to the May 19th meeting is not a material misstatement of fact and we hold that the affidavit is more than sufficient to support the magistrate's finding of probable cause.

The defendant further contends that the agent's averment that "the defendant advised Agent Maas that the confidential informant could go along with him to inspect the cocaine" was also a misstatement of material fact. Again, the defendant cites Agent Maas' testimony out of context, relying on the agent's statement that when he met with the defendant on May 19th all the defendant stated was "I'm ready to go, are you?" The defendant alleges that this statement standing alone is not sufficient to support the truthfulness of the affidavit. We agree, but when this portion of the agent's testimony is read in conjunction with the rest of his testimony, and viewed in its proper context and in its entirety, it supports the facts set forth in the affidavit. The May 19th meeting was the agent's second meeting with the defendant and during both the 18th and the 19th meetings the agent and the defendant discussed the sale of drugs. When the defendant stated "I'm ready to go, are you?" it is obvious that he was referring to his prior discussion

of May 18th with the agent concerning the purchase and delivery of a large quantity of cocaine. Moreover, it is unlikely that the defendant could have been expected to be more explicit in his May 19th statement to the agent when considering that they were discussing the drug transaction in a public place during the noon hour while seated at a table in a crowded restaurant. The defendant also states that he never told Maas that the confidential informant "could go along with him to inspect the cocaine" as stated in the affidavit; but, the defendant conveniently fails to remember and ignores the fact that during the May 18th meeting with Agent Maas the defendant insisted that the confidential informant (Haman) would have to accompany him (Gaertner) during any future transaction. Therefore, when read in its entirety and not out of context in a word by word fashion as suggested by the defendant, Agent Maas' testimony clearly supports the truthfulness of the statements contained in the affidavit. We approve of the district court's decision denying the defendant's motion to suppress and hold that the affidavit presented was sufficient to support the magistrate's finding of probable cause to issue a search warrant.

## HEARSAY

At trial, the defendant sought to relate to the jury statements allegedly made by William Haman, the government's informant, concerning the "loan/collateral agreement" between Haman and the defendant. Gaertner argued that Haman gave him the cocaine to hold as collateral for a loan and thus he (Gaertner) never intended to deliver the cocaine to Agent Maas. The district court ruled that the testimony of the defendant and his wife concerning statements allegedly made by Haman about the "loan" were hearsay and not admissible as evidence, but the court did allow Gaertner to testify as to his perception of the purported loan/collateral agreement. Citing case law from this and other circuits, the defendant asserts it was error for the district court to exclude the statements purportedly made

by Haman as he (Gaertner) was not attempting to introduce the statements to prove the truth of the matter asserted, but rather to establish his (Gaertner's) state of mind at the time of his arrest.

■ Rule 802 of the Federal Rules of Evidence provides that "[h]earsay is not admissible except as provided by these rules or by other rules prescribed by the Supreme Court . . . ." Rule 801(c) of the Federal Rules of Evidence defines hearsay as:

"a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted."

After reviewing the record, we agree with the trial court's ruling and our reading of the record reflects that the defendant was in fact attempting to introduce Haman's alleged statements relating to the purported loan to prove the truth of the matter asserted and not to prove the defendant's state of mind. Therefore, the cases cited by the defendant are not controlling.

The defendant misconstrues case law allowing the introduction of out of court statements for the limited purpose of establishing the defendant's state of mind as the cases the defendant relies on are factually distinguishable from the case at bar. For example, in *United States v. Demopoulos,* 506 F.2d 1171 (7th Cir.1974), *cert. denied,* 420 U.S. 991, 95 S.Ct. 1427, 43 L.Ed.2d 673 (1975), the government offered testimony that a witness received an anonymous telephone call informing the witness that his application for a liquor license would not be approved unless he made a $5,000 payment to the defendant. In *Demopoulos,* the defendant asserted that it was reversible error for the court to permit the jury to consider this telephone conversation on the grounds that the content of the conversation was inadmissible hearsay. The Seventh Circuit disagreed, holding that the record revealed the testimony was not introduced to prove the truth of the matter contained in the statement (i.e. that the witness would not have received his liquor license unless he paid the defendant $5,000) but rather was received in evidence for the

limited purpose of allowing the jury to understand what motivated the witness to withdraw money from his savings account and give that money to the defendant. Similarly, in *United States v. Herrera,* 600 F.2d 502 (5th Cir.1979), cited by Gaertner, Herrera was arrested while driving a vehicle transporting illegal aliens. At trial, the defendant sought to establish that she had been threatened with physical violence if she refused to drive the automobile transporting the illegal aliens and therefore her criminal violation was pardonable as it was perpetrated under duress. The circuit court ruled that this testimony was not hearsay because it was offered "to show [the defendant's] state of mind [fear] in consequence of the statements," *id.* at 504, and not to prove the "truth of the matter asserted," i.e. that one of the aliens would actually carry out his threat of physical violence.

In the instant case, Haman's alleged statements relating to the purported loan would not have been introduced for the limited purpose of showing "the defendant's state of mind" but rather, the defendant attempted to use the statements to prove the "truth of the matters asserted," i.e. that the "loan/collateral" agreement did in fact exist. Logical reasoning leads to the conclusion that before the jury could believe that the alleged loan/collateral transaction took place they would necessarily have had to have found credible the truthfulness of Haman's alleged statements. We affirm the trial court's ruling that the statements allegedly made by Haman relating to the purported loan agreement with the defendant were hearsay, and thus not admissible as evidence at trial.

## EVIDENCE OF PRIOR CONVICTIONS

After the government rested its case and before the defense had presented its case, the prosecutor informed the court and the defendant that the government would attempt to introduce evidence of the defendant's seven prior felony convictions to impeach the defendant's testimony if the defendant chose to testify on his own be-

half. The defendant objected, and in ruling on whether to allow the proposed impeachment testimony during the defendant's cross-examination the district judge stated he weighed and balanced the probative weight of the defendant's convictions against their possible prejudicial effect and determined that the defendant's prior convictions for the possession of marijuana with the intent to distribute would not be admissible because:

"I am of the opinion that the marijuana conviction[s] should be excluded and the tax evasion conviction should be permitted. The attack on the defendant's credibility, my main problem with the marijuana charge[s] is that it's a bad man inference. The idea that the jury might be inclined to take the evidence of past convictions as a substitute for evidence in the present case on a similar kind of charge and I quote from the Seventh Circuit case in the Seventh Circuit in the *Fontan* case, 'There is a danger that a jury will regard past convictions of similar crimes as evidence of bad character or willingness to commit the crime charged or that a jury will conclude the defendant is not "really deserving of the presumption of innocence" although the legitimate inferences can be drawn from prior crime evidence, the danger is that prejudicial and illegitimate inferences will be drawn.'

\*   \*   \*   \*   \*   \*

Now in excluding the marijuana convictions I am not ignoring the fact that one of the main issues in the case is credibility and I am not ignoring the importance of the defendant's testimony and, of course, it's a matter of trying to weigh those against the danger of prejudice and I do think that when you are dealing in the drug area people are prone to put drugs in one big hopper and say to themselves if this guy was dealing drugs before he will deal them again and, of course, that subverts the whole purpose of having a trial and for that reason I think they should be excluded."

After this ruling, the defendant related his "story" that he had received the cocaine from Haman as collateral for a purported loan. The defendant stated that when he was offered the cocaine as collateral he told Haman "I wanted my money, told him that I don't, you know, I'm not into the cocaine thing, the drug thing." He further testified that he told Haman "that I was not going to keep them [the cocaine] any longer than twenty-four hours, that after twenty-four hours from the time I was going to take, dispense of them. I was going to flush them down the toilet . . . ." The defendant later in his testimony again denied his involvement in any drug transactions, stating "I certainly didn't need to be in a situation where I was related to any drug transactions no matter how off-handed or left-handed it was and I didn't need the exposure. I, you know, I wasn't into that."

At the close of the defendant's direct testimony the government requested the court to reverse its prior evidentiary ruling concerning the defendant's prior drug convictions and their prejudicial effect and asked the court to allow the government to cross-examine the defendant concerning his prior marijuana convictions. The government argued that the defendant was open to cross-examination about his prior marijuana convictions because now, for the first time during the trial, the defendant himself had raised the issue of his lack of prior involvement in drug trafficking. After hearing argument, the district court reversed its prior ruling, stating:

"The reason I kept out the marijuana convictions this morning [was] not that the evidence isn't relevant, rather that relevancy must yield to the danger of prejudice and that is really the balance that has to be struck there . . . . But where the accused proposes to show he is a man of good character as tending to prove innocence, the evidence equally relevant meets no such obstacle. There is no substantial danger of prejudice . . . . I think that what the defendant did when he testified was to offer evidence that he was a clean-liver. This is particularly relevant in this case where you have got

a defendant who is a Mr. Wisconsin and where he is a body builder working out twice a day and all of this is bound to have an impact on the jury. So that I think the government is entitled to utilize the past convictions on marijuana to show that he in fact wasn't such a clean-liver. I think he put the matter in issue."

The defendant contends that the district court's decision to allow the government to include impeachment questions in its cross-examination of Gaertner concerning Gaertner's previous marijuana convictions was based on the court's "misunderstanding" of Rule 404(a)(1) of the Federal Rules of Evidence. The defendant suggests that his prior drug convictions were not "evidence of a pertinent trait" of his character. The defendant further asserts that the district court erred in allegedly failing to balance the probative value of the evidence against its prejudicial effect. A reading of the record fails to support the defendant's position as the record does reveal that the district court did consider the nature of the evidence before allowing the prosecution to cross-examine Gaertner concerning his prior marijuana convictions in order to rebut Gaertner's contention that he was "a clean-liver" when in fact he had two prior drug convictions. Therefore, we hold that since the evidence of his prior convictions was used solely to impeach Gaertner's credibility as a witness and his testimony concerning his lack of prior experience with drug trafficking, the defendant's position concerning the admissibility of evidence of these convictions is without merit.

Rule 404(a)(1) of the Federal Rules of Evidence provides:

"(a) *Character Evidence Generally.* Evidence of a person's character or a trait of his character is not admissible for the purpose of proving that he acted in conformity therewith on a particular occasion, except:

(1) *Character of Accused.* Evidence of a pertinent trait of his character offered by an accused, or by the prosecution to rebut the same;"

The rule is well-established that once a defendant elects to testify he is subject to cross-examination, including impeachment and proof of prior convictions, if any. *See generally United States v. Dow,* 457 F.2d 246 (7th Cir.1972). Once the defendant takes the witness stand and waives his right not to testify, "the defendant ... may be cross-examined as to his prior convictions to affect his credibility as a witness ..." *id.* at 250; but questioning relating to the prior convictions must be limited to "whether the defendant had previously been convicted of a felony, to what the felony was, and to when the conviction was obtained." *Id.* When Gaertner testified that he was not into "the drug thing," he obviously put his character in issue by attempting to portray himself as a "clean-liver" in the eyes of the jury. Once the defendant denied he was involved in "the drug thing," he raised the issue and opened the door on the question of his prior or present drug involvement, and thus we agree with the trial court and hold that the evidence of Gaertner's prior drug experiences, including his drug (marijuana) convictions was admissible to impeach his testimony and his credibility as a witness.

It was within this framework that the prosecution asked the following questions of the defendant during cross-examination:

Q: Mr. Gaertner, in October of 1975 were you convicted of the crime of possession with intent to distribute marijuana?

A: Yes.

Q: ... in July of 1977, were you convicted of the crime of possession of marijuana with intent to deliver, party to a crime?

\* \* \* \* \* \*

A: At that particular time I was convicted then.

Q: ... And then finally on September 30th of 1977, were you convicted of a violation alleging an income tax evasion?

A: Yes.

The government restricted its questioning to the defendant's prior felony convictions, the nature and type of felony and the date of conviction, as set forth in *United States v. Dow.* Moreover, the jury was clearly instructed that the defendant's prior drug convictions could be considered "only insofar as it may affect the credibility of the defendant as a witness and must never be considered as evidence of guilt of the crime for which the defendant is on trial." Since the government limited its questioning to the factors set forth in *Dow,* and as the prior drug convictions were used only to impeach the defendant's credibility as a witness, we hold that the district court was correct in allowing the government to cross-examine the defendant concerning his prior marijuana convictions.

## REBUTTAL AND SURREBUTTAL

After the defense rested its case, the government recalled Agent Maas to rebut the testimony of two defense witnesses who related that when the defendant met with Agent Maas at the bar in a Milwaukee tavern on May 18th, there were no other customers present. On rebuttal, Agent Maas testified that when he was in the tavern on the evening of May 18th another special agent entered the bar, remained there for a few moments and left. Agent Maas was then asked the following questions:

*Prosecutor:* Finally, Agent Maas, you have heard Mr. Gaertner testify concerning his meetings with you in the courtroom and on the stand, have you not?

*Agent Maas:* Yes, I did.

*Prosecutor:* After hearing that, is there any part of your testimony concerning the conversations you had with him that you desire to change?

*Agent Maas:* No.

It is the defendant's position that the final question put to Agent Maas during rebuttal was so "selfserving as to be devoid of probative value," and because the district court did not allow the defendant to recall the same defense witnesses who previously tes-

tified concerning the presence of the second special agent in the bar, the defendant asserts he should receive a new trial.

It is well established that the admission of rebuttal evidence lies within the sound discretion of the trial court and appellate courts will not interfere with the trial court's ruling unless there is a clear abuse of discretion. *United States v. Walton,* 552 F.2d 1354 (10th Cir.), *cert. denied,* 431 U.S. 959, 97 S.Ct. 2685, 53 L.Ed.2d 277 (1977). Indeed, great deference is accorded to the discretion and judgment of the trial court when granting and/or denying a party's motion for rebuttal or surrebuttal testimony. *United States v. Batts,* 573 F.2d 599 (9th Cir.), *cert. denied,* 439 U.S. 859, 99 S.Ct. 178, 58 L.Ed.2d 168 (1978). In the instant case the district court allowed Agent Maas to testify on rebuttal to refute specific testimony presented by two defense witnesses that (1) there were no other customers in the tavern when Agent Maas first met with the defendant and (2) that the defendant never discussed the sale of cocaine with Agent Maas. The question of whether to admit this rebuttal testimony was clearly within the trial court's discretion. As to the defendant's proposed surrebuttal testimony, the court expressly stated that surrebuttal testimony from the same defense witnesses who testified prior to Agent Maas would only have been cumulative and would not have added relevant evidence to the record. We hold that the court did not abuse its discretion in denying the admission of surrebuttal testimony from the same defense witnesses, repeating the same testimony given earlier at trial, as this testimony would only have been cumulative.

## SENTENCING

The defendant was found guilty of possession of cocaine with the intent to distribute in violation of 21 U.S.C. § 841(a)(1). 21 U.S.C. § 841(b)(1)(A) provides that an individual who violates section 841(a) "shall be sentenced to a term of imprisonment of not more than fifteen years, a fine of not more than $25,000, or both," along with a minimum special parole term of at least three

years, with the maximum length of the special parole term left to the discretion of the sentencing judge.[1]

The enhanced sentence provisions of section 841 provide that if an individual has one or more prior federal convictions under section 841 or under other federal statutes relating to narcotics, marijuana or other illegal drugs the defendant "shall be sentenced to a term of imprisonment of not more than thirty years, a fine of not more than $50,000, or both," along with a *minimum* special parole term of at least six years. After reviewing the entire presentence report and considering the defendant's prior convictions, age, present employment, conduct at trial, intelligence and other aspects of the defendant's character, the district court sentenced the defendant to a term of twelve years imprisonment and a special parole term of six years. It is the defendant's position that the district judge relied on the enhanced sentence provisions of section 841 when sentencing the defendant, and since the government failed to file the prior conviction information form required by section 851, the defendant's sentence should be set aside.

■ Our review of the record fails to support the defendant's position that the trial court erroneously relied upon the enhanced sentence provisions of section 841. While it is true that the trial judge stated he felt Gaertner's "maximum exposure" was 30 years imprisonment, a $50,000 fine and a minimum term of six years special parole, the judge sentenced Gaertner to only twelve years imprisonment plus six years special parole. We have found nothing in the transcript of the sentencing hear-

ing which supports the defendant's position that the judge relied on the enhancement provisions of section 841. The twelve-year term of imprisonment does not reveal any proof of "enhancement" of sentence as a term of twelve years is well within the fifteen year statutory maximum for first offender drug dealers as contrasted with a sentence of more than fifteen years or sixteen to thirty years of imprisonment authorized under the enhancement provisions of section 841. We would agree that if the trial judge had sentenced Gaertner to more than fifteen years imprisonment this would show that the judge relied on the enhanced sentence provisions of section 841; however, in the absence of such a sentence no proof of enhancement can be shown. Furthermore, section 841 establishes only the *minimum* mandatory special parole term of three years; there is no limit on the maximum length of a special parole term a judge may impose on first offenders under section 841. *United States v. Salas,* 602 F.2d 215 (9th Cir.1979). Therefore, simply because the defendant was sentenced to a term of six years special parole does not automatically lead to the conclusion that the judge erroneously relied on the enhanced sentence provisions of section 841 as the judge could have imposed an even longer term of special parole if he felt a longer term was necessary and still be well within the sentencing confines for a first time offender. Since both the twelve-year term of imprisonment and the six-year special parole term are within the maximum sentences[2] allowable for first offender drug dealers under section 841, we hold the trial

---

1. Special parole differs from ordinary parole in that the length of a defendant's term of special parole is set by a judge at the time of sentencing. The violation of ordinary parole cannot lead to confinement beyond the original sentence of imprisonment while special parole, as in drug cases, entails the possibility that a defendant may have to serve his original sentence of imprisonment plus an additional period of confinement should he violate the terms of his special parole. *See Moore v. United States,* 592 F.2d 753 (4th Cir.1979).

2. Our holding in this case does not conflict with this court's decision in *United States v. Johnson,* 506 F.2d 305 (7th Cir.1974), *cert. denied,* 420 U.S. 1005, 95 S.Ct. 1448, 43 L.Ed.2d 763 (1975), where the court remanded for resentencing because the district judge improperly relied upon the defendant's prior state conviction for drug violations when enhancing the defendant's sentence under section 841 rather than limiting his inquiry to federal drug convictions. In the instant case, the defendant's previous convictions were in the federal courts for the violation of federal drug laws, and these convictions were undisputed.

judge did not abuse his discretion in sentencing the defendant.[3] We affirm.

---

3. Under Fed.R.Crim.P. 35(b), the defendant may file a motion to reduce his sentence at any time within 120 days from the receipt of the mandate from this Court. We voice no opinion as to what action the district court should take, if any, if a motion is filed.