# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 13-50923

United States Court of Appeals
Fifth Circuit

**FILED**

January 12, 2015

Lyle W. Cayce
Clerk

UNITED STATES OF AMERICA,

>   Plaintiff – Appellee,

v.

PAOLO MARTIN RAMIREZ-CHAVEZ,

>   Defendant – Appellant.

Appeal from the United States District Court
for the Western District of Texas
USDC No. 2:13-CR-490-1

Before STEWART, Chief Judge, and BARKSDALE and GRAVES, Circuit Judges.

PER CURIAM:*

Defendant-Appellant Paolo Martin Ramirez-Chavez (Ramirez) was convicted of illegal reentry and argues on appeal that the district court erred by excluding evidence supporting his duress defense at trial. We disagree and AFFIRM the district court's grant of the motion in limine.

---

* Pursuant to 5th Cir. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5th Cir. R. 47.5.4.

No. 13-50923

## I.    Factual and Procedural History

Ramirez was convicted after a jury trial of illegal reentry into the United States.  Prior to trial, the Government filed a motion in limine seeking to exclude, *inter alia*, evidence that Ramirez was acting under duress when he reentered the United States.  The Government argued that Ramirez could not make a threshold showing of all of the elements of a duress defense, and therefore, any evidence of duress should be excluded.  Ramirez opposed the Government's motion, asserting that he gave timely notice of his intent to raise a duress defense, that the circumstances surrounding his reentry into the United States show that he had no other reasonable legal alternative to violating the law, and that this court has not addressed whether a district court may exclude at trial evidence of a duress defense.

The district court took up the motion just prior to trial.  According to defense counsel's proffer, Ramirez hired Christian Ortiz to transport him from Nicaragua into the United States.  Ortiz and another smuggler successfully smuggled Ramirez into the United States.  Ramirez was later apprehended by border patrol officers and removed from this country.  Thereafter, Ramirez contacted Ortiz and again requested that Ortiz smuggle him into the United States.  The second trip was also successful; however, Ortiz was later apprehended and returned to Nicaragua.

Ramirez requested Ortiz's help a third time, and on that trip, they took a different route than the two previous trips.  Upon their arrival in Piedras Negras, Mexico, another smuggler met Ramirez at a bus station and informed Ramirez that he was making arrangements to bring Ramirez across the border. The smuggler asked for $1,500.  Ramirez called his wife, and she agreed to send the payment.  The smuggler then took Ramirez to a house and placed him in a room with two other men; they were guarded by three men armed with automatic rifles and a pistol.  The next morning, the smuggler demanded that

Ramirez pay an additional $2,000 to $3,000. A captor then beat Ramirez below his knees and in his kidneys with a board that measured three feet long by one-half inch thick. The smuggler told Ramirez that he would not be released until his wife paid the demand. The beatings continued for seven days, and the captors photographed Ramirez and emailed the pictures to his wife. On the seventh day, Ramirez was alone in the house and escaped through an unlocked door. After running for several minutes, Ramirez flagged down a taxi and asked the driver to take him to the border. The driver dropped off Ramirez near the Rio Grande, and he waded across the river and entered the United States. About 10 to 20 minutes later, Ramirez encountered border patrol officers. He ran from them but was apprehended and taken into custody.

With respect to the duress defense, Ramirez asserted that he had no reason to anticipate that he would be kidnapped and tortured because he had used the same smuggler twice before without any complications. Ramirez asserted that there were no reasonable legal alternatives because he was unfamiliar with the area, and he was unsure whether he was being pursued. In his mind, the only reasonable thing to do was to go the border. Ramirez argued that he was in immediate danger because he had been held for a week, and he had been beaten. Ramirez also believed that his captors would come after him because they wanted to be paid.

The Government argued that Ramirez had not set forth any evidence satisfying the elements of a duress defense because he recklessly or negligently put himself in the situation to be kidnapped by hiring a smuggler to smuggle him into the United States and because he had reasonable legal alternatives to illegally entering this country, such as going to the police or a bus station. The Government also argued that Ramirez had not shown that he was in immediate danger because at the time that he entered the U.S., he was not being pursued by his captors.

No. 13-50923

The district court stated, the "big problem here for your client is that he runs out, he composes himself, a taxi comes along, he gets in the tax[i]." The court stated that thereafter, Ramirez could have asked the driver to take him to the Mexican police or to U.S. officials at the border crossing, but instead he opted to swim across the Rio Grande.

In its written order granting the Government's motion in limine, the district court noted that Ramirez had not cited any precedent foreclosing the court's pretrial review of a duress defense and that the overwhelming majority of federal courts of appeals have permitted pretrial review of a defendant's evidence relating to a defense of duress. The district court opined that pretrial review of the duress defense would prevent juror confusion that could result from the introduction of irrelevant and prejudicial evidence.

Next, the district court found that Ramirez could not satisfy all the elements of the duress defense. In particular, the court determined that Ramirez could not show that he was faced with a present, imminent, and impending threat of such a nature as to induce a well-grounded apprehension of death and serious injury because, after he was safe in the taxi, he could have asked the driver to take him anywhere in the city. Ramirez's captors were not in hot pursuit because he had slipped away from the house unnoticed. The court found that Ramirez made a conscious decision to go to the border instead of pursuing other courses of action, such as asking the driver to take him to the police or to the legal border crossing where he could have sought refuge, and that he crossed the border without anyone pursuing him.

The court also determined that Ramirez had failed to show that he had not recklessly or negligently placed himself in a situation in which it was probable that he would be forced to choose the criminal conduct because he hired the smugglers to help him commit the crime of illegal reentry. In other

4

No. 13-50923

words, because Ramirez hired the smugglers for an illegal purpose, he negligently placed himself in a dangerous situation.

Additionally, the court found that Ramirez had failed to establish that he had no reasonable legal alternative to violating the law. Specifically, once Ramirez reached the taxi, several reasonable legal alternatives were available to him. Instead, he made the conscious decision to cross the border without reporting to authorities. Because Ramirez provided insufficient evidence supporting his duress defense, the court concluded that his defense failed as a matter of law. Thus, the motion in limine was granted, and the duress defense was not presented to the jury.

The jury found Ramirez guilty as charged, and the district court sentenced him to 11 months in prison. This timely appeal followed.

## II.    Discussion

### a.  Standard of Review

The legal sufficiency of a proffered defense is a question of law and is reviewed de novo. *United States v. Lee*, 208 F. App'x 352, 353 (5th Cir. 2006) (per curiam); *accord United States v. Johnson*, 416 F.3d 464, 468 (6th Cir. 2005); *United States v. Tokash*, 282 F.3d 962, 967 (7th Cir. 2002); *United States v. Moreno*, 102 F.3d 994, 997 (9th Cir. 1996). Further, in order to present a duress defense to the jury, the defendant "must present evidence of each of the elements of the defense" and must do so by a preponderance of the evidence. *United States v. Posada-Rios*, 158 F.3d 832, 873 (5th Cir. 1998) (citing *United States v. Bailey*, 444 U.S. 394, 415 (1980)); *Dixon v. United States*, 548 U.S. 1, 17 (2006).

### b.  Applicable Law

The affirmative defense of duress requires the defendant to show (1) that he was under an unlawful, present, imminent, and impending threat that would induce "a well-grounded apprehension of death or serious bodily injury,"

No. 13-50923

(2) that he had not recklessly or negligently placed himself in the situation at issue, (3) that he had no legal and reasonable alternative to violating the law, and (4) that it was reasonable to anticipate that the avoidance of harm directly caused the criminal action. *Posada-Rios*, 158 F.3d at 873.

### c. Analysis

Because Ramirez, on appeal, abandons his argument that the district court may not exclude inadmissible evidence prior to trial and concedes that Federal Rule of Evidence 104 may permit such an exclusion under certain circumstances, we will not address this issue. However, we affirm the decision granting the motion in limine for the same reasons as the district court, as Ramirez did not present sufficient evidence to prove the first three elements of the duress defense.

With respect to the first element, the district court determined that Ramirez had not shown that an imminent threat existed. We agree. Ramirez was required to show a "present, imminent, or impending" threat arising from "a real emergency leaving no time to pursue any legal alternative" or an "absolute and uncontrollable necessity" at the time that he committed the offense. *Id.* at 873–74 (internal quotation marks and citation omitted). Fear of future harm does not satisfy the present, imminent, and impending threat requirement. *United States v. Harvey*, 897 F.2d 1300, 1305 (5th Cir. 1990), *overruled on other grounds by United States v. Lambert*, 984 F.2d 658 (5th Cir. 1993) (en banc). The defendant must produce evidence that he "was in danger of imminent bodily harm *at the moment* he [committed the offense]." *United States v. Harper*, 802 F.2d 115, 118 (5th Cir. 1986) (emphasis added).

In the instant case, the district court correctly found that no "imminent threat" existed. *See Posada-Rios*, 158 F.3d at 874. Ramirez had escaped his captors—he slipped away from the house unnoticed—and they were not in hot pursuit at the time that he crossed the river and illegally entered the United

6

No. 13-50923

States.  As such, Ramirez failed to show that a "real emergency" existed at the time that he waded across the Rio Grande and has failed to present sufficient evidence to satisfy this element of a duress defense.  *See id.*

Likewise, we agree that Ramirez cannot show that he did not negligently place himself in this situation.  *See id.* at 873.   As the district court found, Ramirez traveled from Nicaragua to Piedras Negras and became involved with smugglers only to commit the crime of illegal reentry.  It is immaterial that Ramirez had hired the same smuggler on two prior occasions without complications, as he nevertheless hired the smuggler a third time to help him commit the crime of illegal reentry, thereby placing himself in the situation to be kidnapped.   His own actions negligently placed him in a dangerous situation, and thus, Ramirez has not shown sufficient evidence of the second element.  *See id.*

We also agree that Ramirez cannot show that he "had no reasonable legal alternative to violating the law."  *Id.* (internal quotation marks and citations omitted).  A reasonable legal alternative exists if a defendant has "a chance both to refuse to do the criminal act and also to avoid the threatened harm." *Id.*  To prove that no legal alternatives existed, a defendant "must show that he actually tried the alternative or had no time to try it, or that a history of futile attempts revealed the illusionary benefit of the alternative."  *Id.* at 874 (quoting *Harper*, 802 F.2d at 118).  In the instant case, Ramirez had several reasonable legal alternatives once he reached the taxi cab.  He could have asked the driver to take him to a police station, a bus station, or even a legal entry point at the border.  Because his captors were not in hot pursuit, Ramirez had enough time to pursue these reasonable alternatives.

Ramirez argues that he was unfamiliar with the city but knew that he was near the border; thus, he asserts that it was reasonable that he asked to be taken there.  However, the taxi driver was likely familiar with the city such

7

that he could have taken Ramirez to an alternative, safe location. Thus, Ramirez has not shown sufficient evidence that he attempted a legal alternative, that there was no time to try an alternative, or that the alternative was not a viable option. *See id.* at 874. He therefore fails to prove this element.

Lastly, contrary to Ramirez's argument, *United States v. Herrara* is not analogous here. 600 F.2d 502 (5th Cir. 1979). In *Herrara*, the defendant testified at trial that a party, Escamilla, had threatened her into illegally transporting aliens. *Id.* at 504. However, the district court would not allow her to testify regarding a specific telephone conversation in which Escamilla threatened Herrara with bodily harm and told her that she had friends who could carry out the threat. *Id.* This court found that the district court had improperly found that the evidence was hearsay and that because the district court instructed the jury on the duress defense, the jury was entitled to consider the threatening statements. *Id.*

Ramirez's reliance on *Herrara* is misplaced. In that case, the issue was not whether Herrara could present her duress defense to the jury, but rather, whether alleged hearsay evidence supporting that defense could be presented to the jury. *See id.* Additionally, the excluded evidence in *Herrara* showed that Escamilla threatened Herrara into committing the underlying offense of transporting aliens. However, here, the smugglers threatened Ramirez so that his wife would pay additional money to the kidnappers, not so that he would commit the crime of illegal reentry. Thus, unlike the threats in *Herrara*, there is a more tenuous causal link between the threats and Ramirez's illegal conduct. *See Posada-Rios*, 158 F.3d at 873 (requiring a direct causal connection between the avoidance of harm and the criminal actions).

### III. Conclusion

Based on the foregoing, we AFFIRM.