**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**Ruben RODRIGUEZ–PANDO,**
**Defendant–Appellant.**

No. 86–2738.

United States Court of Appeals,
Tenth Circuit.

Feb. 26, 1988.

Narciso Garcia of Toulouse, Toulouse & Garcia, P.A., Albuquerque, N.M., for defendant-appellant.

Presiliano A. Torrez, Asst. U.S. Atty. (William L. Lutz, U.S. Atty. for D. New Mexico, with him on the brief), Albuquerque, N.M., for plaintiff-appellee.

Before McKAY and TACHA, Circuit Judges, and ALLEY, District Judge.*

* Honorable Wayne E. Alley, United States District Judge for the Western District of Okla-

TACHA, Circuit Judge.

Ruben Rodriguez–Pando appeals his conviction for violation of 21 U.S.C. § 841(a)(1), possession with intent to distribute cocaine in excess of one kilogram.

On July 9, 1986, Officers Frisk and Denton, each in separate patrol cars, were traveling west on County Road 21 in southwestern New Mexico. They had been informed that narcotics were being transported by airplane to that vicinity and were looking for evidence of aircraft landings. At approximately 10:00 a.m., they observed a red pickup truck followed closely by a blue pickup truck approaching them. Officer Frisk testified that the blue pickup was weaving erratically between the shoulder and the middle of the road. Suspecting an intoxicated driver, Officer Frisk turned around to follow the blue pickup. This action prompted the driver of the red pickup[1] to substantially increase his speed. Officer Denton, who had also turned around, activated his emergency equipment, passed Officer Frisk and the blue pickup, and pursued the red pickup.

Officer Frisk continued to follow the blue pickup for several miles and observed that it was carrying a heavy load. He surmised the driver was having trouble steering the vehicle. Officer Frisk testified that he intended to stop the blue pickup at the point where Officer Denton stopped the red pickup. However, when Officer Frisk saw the red pickup and Officer Denton turn right onto County Road 11 at a high rate of speed, he activated his emergency equipment approximately 100 yards before reaching that road. Defendant slowed the blue pickup, turned onto County Road 11, and stopped.

In approaching the pickup, Officer Frisk observed a yellow package wrapped in plastic as well as brown packages alongside a tarp which covered most of the load. He asked defendant for his driver's license, which Pando produced. Officer Frisk then asked for the truck's registration. Defend-

ant opened the glove compartment of the pickup, and Officer Frisk saw the butt of a weapon protruding from a red rag. As Pando began pulling the gun out of the rag, Officer Frisk drew his weapon and ordered Pando to drop the gun. Pando released the weapon on the glove box drawer. Officer Frisk arrested, searched, and handcuffed Pando and then placed him in the back seat of his patrol car. He thereafter lifted the tarp in the back of the truck and found what was later determined to be over 1100 pounds of cocaine. After Pando's arrest, officers obtained a search warrant to obtain a urine sample and conduct a urinalysis.

The next morning Pando made a tape-recorded statement to New Mexico State Police Officer John Sena. Pando claimed in this statement that he had been coerced into transporting the contraband and that both he and his family were threatened that morning with physical harm if he did not cooperate. At trial, the court excluded the statement as hearsay.

Pando raises several issues on appeal. First, he argues that the district court erred in refusing to suppress the cocaine found in his truck—he claims that the evidence was obtained during an unconstitutional search and seizure. Second, he argues that the court erroneously admitted the results of the urinalysis. In this regard, he attacks the validity of the warrant used to obtain the sample; he also claims that the prejudicial impact of the evidence outweighed its probative value. Third, the defendant asserts that the court erred in excluding his tape-recorded statement to Officer Sena. His final contention is that his twenty-year sentence is excessive under the circumstances.

### Search and Seizure

Pando claims that both the initial stop of his vehicle and its subsequent search were unconstitutional. We hold

---

homa, sitting by designation.

**1.** Pando's codefendant, Juan Lujan–Miranda, was driving the red pickup. We deal with his appeal of his conviction on the same charge in a

separate unpublished opinion. *United States v. Lujan-Miranda*, No. 86–2737, slip opinion (10th Cir. February 26, 1988).

that the initial stop was based on "an articulable and reasonable suspicion" that the driver was intoxicated and was therefore justified. *United States v. Sharpe*, 470 U.S. 675, 105 S.Ct. 1568, 1573, 84 L.Ed.2d 605 (1985). The district court found that Pando's truck "was moving from side to side and left the paved portion of the road once in a while. It also weaved over the center of the road." Erratic driving of this nature justified the officer's belief that Pando was driving while intoxicated and made the investigative stop proper. We also hold that Pando's arrest for assaulting an officer after he grabbed a weapon was lawful.

■ We further hold that the subsequent warrantless search of the truck was valid. Under the automobile exception to the warrant requirement an automobile may be searched without a warrant if there is probable cause to believe that the vehicle contains contraband. *Carroll v. United States*, 267 U.S. 132, 149, 45 S.Ct. 280, 283–84, 69 L.Ed. 543 (1925). The events preceding the search gave the officer probable cause to believe the truck contained illegal drugs: the truck with which Pando was traveling attempted to evade the officers; the officers had received reports that drugs were being transported in the area; Pando was carrying a heavy load and appeared nervous; he reached for a weapon; and, finally, the officer saw several packages wrapped in a fashion often used to wrap cocaine. We hold that these circumstances gave the officer probable cause to search the truck.

### Urinalysis

Pando next raises several objections to the use of the urinalysis results at trial. He argues first that the affidavit used to obtain the search warrant was insufficient to establish probable cause.

The affidavit stated:

[Pando] [w]as driving a vehicle which was carrying approximately 675 lbs. of cocaine. Also, subject's eyes are bloodshot and subject appears to be in a stuporous condition, associated by Officer Denton to be intoxicants.

■ Pando asserts that the facts listed in the affidavit are erroneous. In particular, he argues that " 'red, watery eyes, and a stuporous condition' are not symptoms of cocaine use or withdrawal." Before Pando may attack the veracity of the facts in the affidavit, he must make a "substantial preliminary showing that a false statement knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant in the warrant affidavit," and that "the allegedly false statement is necessary to the finding of probable cause." *Franks v. Delaware*, 438 U.S. 154, 155–56, 98 S.Ct. 2674, 2676, 57 L.Ed. 667 (1978). Pando has not made a substantial showing that the affidavit contained intentionally false statements. Indeed, an expert for the defense testified that "bloodshot" eyes *are* sometimes an indication of cocaine intoxication. Furthermore, most of the allegedly false statements to which Pando objects were found not in the affidavit concerning him but in a separate affidavit underlying a search warrant used to obtain a urine sample from Pando's codefendant. Since Pando has no cognizable interest in his codefendant's urine sample, any false statement that might exist in the separate affidavit did not violate Pando's constitutional rights. "[D]efendants … may only claim the benefits of the exclusionary rule if their own Fourth Amendment rights have … been violated." *United States v. Salvucci*, 448 U.S. 83, 85, 100 S.Ct. 2547, 2549, 65 L.Ed.2d 619 (1980).

■ Pando's next objection to the urinalysis is that the magistrate himself was not familiar with the symptoms of cocaine use and therefore "was not acting as a neutral and detached and independent magistrate." A magistrate is not held to the level of knowledge of an expert witness. Affidavits are to be viewed "with common sense and not subjected to hypertechnical scrutiny." *United States v. Williams*, 605 F.2d 495, 497 (10th Cir.), *cert. denied*, 444 U.S. 932, 100 S.Ct. 276, 62 L.Ed.2d 189 (1979). The affidavit in this case set forth the underlying facts in sufficient detail to allow a neutral magistrate to make a determination as to probable cause. *United*

*States v. Marcello,* 570 F.2d 324, 325 (10th Cir.1978). Furthermore, the facts stated in the affidavit support the magistrate's determination that probable cause existed.

■ Pando raises two more issues regarding the urinalysis. He argues that the urinalysis was not ordered after a lawful arrest. We have already held that the arrest was lawful. Finally, Pando claims that the prejudicial impact of the evidence outweighed its probative value. "A trial court has broad discretion to determine whether the probative value of evidence outweighs the risk of prejudice." *United States v. Primrose,* 718 F.2d 1484, 1492 (10th Cir.1983). We cannot say that the district court abused its discretion by holding the evidence admissible. Pando's defense was that he was an innocent victim who was forced by threats to transport the cocaine. His own use of cocaine casts doubt on this story and is therefore probative. Pando argues, however, that any probative value is vitiated by the lack of reliability inherent in the tests used. We conclude that the question of how much weight should be given to this evidence was properly left to the jury. *United States v. Watson,* 594 F.2d 1330, 1335 (10th Cir.1979).

### Tape Recording

■ "In a review of the evidentiary rulings of a trial court, this court may not reverse in the absence of an abuse of discretion." *United States v. Cooper,* 733 F.2d 1360, 1366 (10th Cir.), *cert. denied,* 467 U.S. 1255, 104 S.Ct. 3543, 82 L.Ed.2d 847 (1984). The need for deference to a trial court ruling on a hearsay objection is particularly great because the determination of whether certain evidence is hearsay rests heavily upon the facts of a particular case. We hold that the district court did not abuse its discretion in excluding Pando's tape-recorded statement to the police officer.

■ Pando argues that the tape recording was admissible because it was not offered to prove that someone was going to kill him and his family, but rather to show his state of mind. It is true that the tape was not offered to prove that someone was actually going to kill Pando. However, we agree with the district court's implicit determination that the matter asserted in the tape was that Pando had been threatened. Thus, the tape was offered to prove the truth of the matter asserted and was therefore hearsay. The trial judge did not abuse his discretion in so holding.

Here we do not have the defendant testifying about matters within his personal knowledge, the words of Mr. X. Rather, we have what amounts to an offer of proof that a third party heard the defendant describe the words of Mr. X. This certainly seems to be an attempt to establish by hearsay that those words were spoken. The issue in this case then is not whether Pando could testify as to the out-of-court statement of the person who threatened him. The question is whether the jury may hear a tape recording of Pando's *out-of-court repetition* of the threat.

*United States v. Herrera,* 600 F.2d 502 (5th Cir.1979), upon which Pando relies, involved different facts. In that case, the Fifth Circuit held that the trial court erroneously excluded the defendant's *in-court* testimony regarding a threat she had received. In *Herrera,* the defendant's repetition of the threat would have been made under oath and in the presence of the jury. Furthermore, Herrera would have been subject to cross-examination.

By contrast, Pando's repetition of the threat was not made under oath; indeed, it was made in circumstances which cast serious doubt on its credibility—a post-arrest interview with a police officer. Nor did Pando repeat the threat in the presence of the jury. Moreover, Pando was not available for cross-examination concerning his assertion that he had been threatened. *Herrera* and similar cases cited by the defendant are simply inapposite. *See, e.g., United States v. Wright,* 783 F.2d 1091, 1098 (D.C.Cir.1986) (defendant sought to testify in court regarding a threat he had received). *See also United States v. Rubin,* 591 F.2d 278, 283 (5th Cir.) (defendant sought to testify in court regarding statements made to him), *cert. denied,* 444

U.S. 864, 100 S.Ct. 133, 62 L.Ed.2d 87 (1979); *United States v. Scandifia*, 390 F.2d 244, 251 (2d Cir.1968) (when defense counsel pointed out inconsistency in witness's account, the witness was allowed to testify regarding a threat in order to explain the inconsistency), *vacated on other grounds*, 394 U.S. 310, 89 S.Ct. 1163, 22 L.Ed.2d 297 (1969). There is a great difference between what the defendant would testify, and what the third party would testify that the defendant said out of court, in terms of fair opportunity to test the truth of defendant's declaration that someone actually uttered the threatening words.

The evidentiary ruling that we review here raises concerns similar to those discussed by the Eleventh Circuit in *United States v. Willis*, 759 F.2d 1486 (11th Cir.), *cert. denied*, 474 U.S. 849, 106 S.Ct. 144, 88 L.Ed.2d 119 (1985). In that case two men were apprehended with 800 pounds of cocaine on their private plane. One of the defendants told the arresting officer that he thought the plane contained only mail. At trial the defendant sought to elicit this statement from the officer during cross-examination. He claimed that the statement was not hearsay because it was not offered to prove the truth of the matter asserted, *i.e.*, that the plane contained only mail. The trial court held the evidence inadmissible. The court of appeals affirmed saying:

"The appellants also take issue with the court's ruling that the defense could not elicit, through the cross-examination of Agent Anderson, [the defendant's] allegedly exculpatory statements at the time of his arrest. Obviously, the defense sought to place [the defendant's] remarks before the jury without subjecting [him] to cross-examination. This is precisely what is forbidden by the hearsay rule."

*Id.* at 1501. Similarly, the district court in this case was concerned not with the admissibility of the threat itself, but with the admissibility of evidence offered through a third party regarding Pando's out-of-court *repetition* of the threat. The district court did not err in ruling that the recording was hearsay.

■ The court correctly observed that the recording was not admissible under any exception. The state of mind exception, Fed.R.Evid. 803(3), does not apply since Pando's post-arrest statement to Officer Sena was a "statement of memory or belief" expressly excluded by Rule 803(3) itself. "The essence of the state of mind exception is that there are circumstantial guarantees of trustworthiness attendant to a statement that reflects a then existing mental, emotional or physical condition...." *Trustees of the Univ. of Pa. v. Lexington Insurance Co.*, 815 F.2d 890, 905 (3d Cir.1987). "[S]tatements relating to a person's state of mind have probative value mainly because the declarant has no chance to reflect upon and perhaps misrepresent his situation." *United States v. Jackson*, 780 F.2d 1305, 1315 (7th Cir.1986). Pando's post-arrest statement to an officer was not admissible to show his state of mind at the time of arrest.

■ Pando next claims that the district court erred in "advising the government when it had no objection to the admission that if the government objected, the court would sustain the objection." Our review of the record reveals that this claim is unfounded. The government *did* object by pointing out that the evidence was hearsay. There appears to have been some confusion as to basis of the objection, and the government offered to withdraw it. The court said, "Okay. You can withdraw it if you want. It's a valid objection...." We find no reversible error in this comment.

### Sentence

■ Pando's final contention is that his twenty-year sentence is excessive. He complains that he received the same sentence as his codefendant who had a prior criminal record.

Since the sentence was within the statutory limits, we may not reduce it on appeal in the absence of a proper motion by the defendant to the district court under Fed.R. Crim.P. 35(b). *United States v. Martinez*, 749 F.2d 601, 607 (10th Cir.1984).

AFFIRMED.

McKAY, Circuit Judge, dissenting:

I agree with all the majority has said except its treatment of the hearsay issue. Perhaps no rule of law has so bedeviled lawyers and judges nor been so uniformly misunderstood by both. Of course, it has been difficult for those of us educated in former times to accept the fact that hearsay is whatever Fed.R.Evid. 801 says it is. The key part of that rule for present purposes is 801(c). It provides:

(c) **Hearsay.** "Hearsay" is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted.

It is clear from the text of the rule itself that a hearsay objection always involves a two-step analysis. The first step is to determine if it was an out-of-court statement. No one disputes that in this case. The second (and mandatory) step is to see if it was "offered" for the truth of the matter asserted. No one can really dispute that the "offer" in this case was to show state of mind, not the truth of the matter asserted. The majority suggests that the trial court made an "implicit determination" that the "offer" was to prove the truth of the matter asserted.

It is not up to the trial judge to "implicitly determine" that it was offered for the truth of the matter asserted. The duty of the trial court is to consider the party's offer and determine whether it is admissible as offered. The trial court cannot change the offer. Here the trial court did not rule that state of mind was not at issue or that this offer did not show state of mind. If there was another basis for excluding the evidence, the trial court did not rely on it; and we may not rely on it either.

The same statement can be hearsay in one trial and nonhearsay in another because the purpose for which it is offered determines whether the statement is hearsay. A statement not offered to prove the truth of the matter asserted but rather to indirectly infer a party's state of mind or to show the effect of a statement on a party has long been recognized as nonhearsay. The subject matter of the assertion is not

an express articulation of state of mind; instead the declarant's state of mind may be *inferred* from the fact that the assertion was made. Whether the actual subject matter of the assertion is true or not is irrelevant. For example, the defendant in *United States v. Herrera,* 600 F.2d 502 (5th Cir.1979), was convicted of transporting illegal aliens. At trial, she mounted a duress defense, claiming that a Ms. Escamilla had threatened her with physical harm in a telephone conversation if she did not cooperate. The trial court refused to admit testimony regarding the contents of the telephone conversation on hearsay grounds. The Fifth Circuit reversed the trial court, holding that the conversation was not hearsay.

The threatening statements made by Escamilla during the conversation were not offered to prove that Escamilla would actually carry through the threats, but rather to show Herrera's state of mind in consequence of the statements. The trial court instructed the jury on the duress defense; therefore, the jury was entitled to consider Escamilla's statements and Herrera's reaction to them in resolving the issue of criminal intent.

Id. at 504. *See also United States v. Shepherd,* 739 F.2d 510, 514 (10th Cir.1984); *United States v. Wright,* 783 F.2d 1091, 1098 (D.C.Cir.1986); *United States v. Rubin,* 591 F.2d 278, 283 (5th Cir.), *cert. denied,* 444 U.S. 864, 100 S.Ct. 133, 62 L.Ed.2d 87 (1979); *United States v. Kostoff,* 585 F.2d 378, 380 (9th Cir.1978) (per curiam); *United States v. Cline,* 570 F.2d 731, 734–35 (8th Cir.1978); *United States v. Pate,* 543 F.2d 1148, 1149 (5th Cir.1976); *United States v. DeCarlo,* 458 F.2d 358, 363–64 (3d Cir.) (en banc), *cert. denied,* 409 U.S. 843, 93 S.Ct. 112, 34 L.Ed.2d 83 (1972); *United States v. Scandifia,* 390 F.2d 244, 251 n. 8 (2d Cir.1968), *vacated on other grounds,* 394 U.S. 310, 89 S.Ct. 1163, 22 L.Ed.2d 297 (1969).

The exception to the hearsay rule enunciated in Rule 803(3) only comes into play when the statement is undeniably hearsay because it is a direct and explicit declaration of state of mind, *i.e.,* it is offered to

prove the truth of the substance of what the declarant said. For example, "I intended to kill John" is hearsay *if* it is offered to prove the declarant's *mens rea* of intent. Unlike the nonhearsay described in *Herrera*, no extrapolation from the subject matter of the assertion is necessary in order to infer the declarant's state of mind, and the truth of the subject matter of the assertion is the critical inquiry. The contemporaneous requirement in Rule 803(3) is the putative circumstantial guarantee of trustworthiness that justifies allowing the trier of fact to consider the substance of the hearsay utterance as proof of the declarant's state of mind at the time he or she commented on it. The advisory committee notes on the rules make this clear when they state, "Exception (3) is essentially a specialized application of Exception (1) [present sense impression], presented separately to enhance its usefulness and accessibility."

The statement in the present case is to the effect that Mr. Pando was threatened with physical harm on the morning of his arrest if he failed to cooperate and transport the contraband.* At trial, Mr. Pando sought to introduce this evidence in support of his defense that he lacked criminal intent because he performed the acts for which he was charged under mental duress and coercion. The statement was not offered to prove the truth of the substance of what was told to him, *i.e.*, that someone was going to kill both him and his family. Mr. Pando could have misconstrued what was told to him or even imagined the threats. Rather, just as in *Herrera*, the statement was offered to demonstrate that Mr. Pando *believed* he was threatened with bodily harm, acted because of the impact of this statement, and thus lacked the requisite criminal intent. The statement was offered to indirectly establish his state of mind, the essence of his coercion defense. Hearsay analysis thus dictates that because the statement was not offered to

prove the truth of what was said, it is nonhearsay and admissible without resort to the hearsay exception in Rule 803(3). I am persuaded that the trial court abused its discretion in refusing to admit the taped statement on the grounds of hearsay. *See Fortier v. Dona Anna Plaza Partners*, 747 F.2d 1324, 1331 (10th Cir.1984) (evidentiary ruling will only be reversed on a showing that the trial court abused its discretion).

The Government essentially argues that failure to admit the statement, if erroneous, was harmless error because it was cumulative of other evidence supporting Mr. Pando's duress defense. Mr. Pando called two police officers as well as a deputy sheriff who testified that Mr. Pando had reported prior threats on his life both in June of 1986 and July 4 or 5 of 1986. One incident involved a shooting at a cafe where Mr. Pando, apparently the intended victim, appeared to be very frightened. Mr. Pando had told the police that those who were threatening him believed him to be an "informant."

The excluded evidence pertained to his state of mind the very morning of Mr. Pando's arrest and was therefore not cumulative of the police officers' testimony relating to the two prior incidents. Moreover, the defendant's own tape-recorded statement made the morning of the arrest was critical evidence of his duress defense for the crime committed that same day and for which he was being tried. The nexus between the state of mind in question and the crime committed that day was compelling; there was no indication that the prior threats testified to by the officers had any direct connection to, much less actuated, the crime for which Mr. Pando was arrested. The erroneous exclusion of this evidence was not harmless. I would remand for retrial.

---

* Mr. Pando told Officer Sena that on the morning of his arrest he had been confronted by armed men and told to drive toward Hobbs, New Mexico, with the contraband. The men allegedly told Mr. Pando that he would be stopped somewhere along the way, and the cocaine would be unloaded. He was warned that he would be watched and that if he failed to do as he was told, his family would be harmed.