UNITED STATES of America, Plaintiff–Appellee,

v.

Oscar ARZAGA, Defendant–Appellant.

No. 93–6019.

United States Court of Appeals, Tenth Circuit.

Nov. 9, 1993.

---

M. Jay Farber, Asst. U.S. Atty. (John E. Green, U.S. Atty., Frank Michael Ringer, Asst. U.S. Atty., with him on the brief), Oklahoma City, OK, for plaintiff-appellee.

Before ANDERSON, GARTH * AND TACHA Circuit Judges.

GARTH, Senior Circuit Judge.

Defendant Arzaga was sentenced to eighteen months in prison after he entered a conditional plea of guilty to a one-count complaint charging him with possession with intent to sell sixty pounds of marijuana in violation of 21 U.S.C. § 841(a)(1). He now appeals the district court's denial of his motion to suppress evidence seized during a search of his automobile. We have jurisdiction over the final judgment of the district court pursuant to 28 U.S.C. § 1291, and will affirm.

I

The facts in this case are not in dispute. In August 1992, the El Paso, Texas Division of the FBI informed the Oklahoma City Division of the FBI, and the Oklahoma City Police Department, that two confidential government informants would be driving from El Paso to Oklahoma City for the purpose of obtaining and transporting cocaine from Oklahoma City to St. Louis. On August 5, 1992, the informants, Arzaga, and an accomplice, Javier Levario–Herrera, met at the informants' Oklahoma City hotel and agreed that Arzaga and Levario–Herrera would procure a quantity of drugs and bring it to the informants' hotel.

Arzaga and Levario–Herrera returned to their apartment complex at approximately 12:30 p.m. The FBI surveilled the apartment for approximately three hours. At 3:30 p.m., Levario–Hernandez left the apartment complex driving a red pickup truck, with Arzaga following in a 1987 Chevrolet Camaro. At that point, a member of the Oklahoma City Police Department stopped Arzaga's Camaro, allegedly for driving less than

Joseph W. Strealy, Schnetzler/Strealy, Oklahoma City, OK, for defendant-appellant.

---

* The Honorable Leonard I. Garth, Senior United States Circuit Judge, United States Court of Appeals for the Third Circuit, sitting by designation.

one car-length behind the pickup truck ("tailgating"), in violation of a city ordinance.

Arzaga was unable to comply with the police officer's request to present a valid driver's license. The officer then asked Arzaga to step out of the vehicle. When the car door opened, the officer noticed that the car's VIN plate was missing some numbers. The officer then searched the Camaro using a narcotics-detection dog, discovered sixty (60) pounds of marijuana, and placed Arzaga under arrest.

At a pre-trial hearing, Arzaga moved to suppress all evidence seized as a result of the search of his Camaro. The district court denied the motion.

## II

Arzaga's contention that the district court should have granted his motion to suppress on grounds that the stop and search of his vehicle without a warrant was unconstitutional presents us with two issues: first, whether the stop of his car for tailgating was pretextual, and second, whether the police were obligated to obtain a search warrant during their three-hour stakeout of Arzaga's apartment.

■ On appeal of the denial of a motion to suppress, we accept the trial court's factual findings unless clearly erroneous, and consider all evidence in the light most favorable to the Government. The ultimate reasonableness of a search, however, and other questions of law, we review *de novo*. *United States v. Evans*, 937 F.2d 1534, 1536–37 (10th Cir.1991).

## A.

■ The Fourth Amendment requires that police have an articulable and reasonable suspicion of criminal conduct before making an investigative stop of an automobile. *United States v. Rodriguez–Pando*, 841 F.2d 1014, 1016–17 (10th Cir.1988), *citing United States v. Sharpe*, 470 U.S. 675, 105 S.Ct. 1568, 84 L.Ed.2d 605 (1985), *relying on Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). In contrast to a lawful investigative stop, "[a] pretextual stop occurs when the police use a legal justification to make the stop in order to search a person or place, or to interrogate a person, for an unrelated serious crime for which they do not have the reasonable suspicion necessary to support a stop." *United States v. Guzman*, 864 F.2d 1512, 1515 (10th Cir.1988) (finding pretextual stop where "[n]o objective circumstances suggested [defendants] had committed any crime more serious than failure to wear their seatbelts"). *See United States v. Smith*, 799 F.2d 704, 707–708 (11th Cir.1986) (finding pretextual stop where police officer stopped car weaving in its lane based on "hunch" that vehicle was carrying drugs).

■ In the present case, Arzaga's assertion that stopping his vehicle was legally pretextual is without merit. Essentially, Arzaga argues that not only could the FBI have obtained a warrant during its three-hour surveillance, but that the city police had not depended on the alleged tailgating offense when they stopped and searched his car. In particular, Arzaga points to the cross-examination of Oklahoma City Police Sergeant Darin Cathey who, when asked if he would have stopped Arzaga's Camaro even if it had not been tailgating, responded, "Yes, I would have stopped the vehicle." The district court, however, found that the Oklahoma City Police had probable cause to stop and search Arzaga's Camaro based on information it had received from the FBI that government informants would be coming to Oklahoma City to consummate a drug transaction.

The Oklahoma City Police, therefore, acted on significantly more than a mere "hunch" that Arzaga was involved in drug trafficking. The district court explicitly found—and Arzaga admits—that, regardless of the tailgating violation, the information possessed by the Oklahoma City Police "would have sufficed as a basis for a stop and search of the vehicle." In fact, the city police had objective information linking Arzaga to illegal drug activity such that not only had they an articulable and reasonable suspicion of criminal conduct, but probable cause as well to support their stop of Arzaga's vehicle. *See United States v. Rodriguez–Pando*, 841 F.2d at 1016–17.

## B.

Since we have found that the stop of Arzaga's automobile was constitutional, in order to succeed on appeal Arzaga must show that the warrantless search of his automobile itself violated the Fourth Amendment. This Arzaga fails to do.

■ It is well established that a warrantless search of an automobile based on probable cause does not violate the Fourth Amendment. *Carroll v. United States,* 267 U.S. 132, 45 S.Ct. 280, 69 L.Ed. 543 (1925); *California v. Acevedo,* 500 U.S. 565, ——, 111 S.Ct. 1982, 1991, 114 L.Ed.2d 619 (1991). The Supreme Court has explained that the warrantless search of an automobile is justified by the vehicle's inherent mobility and the diminished expectation of privacy which surrounds the automobile. *United States v. Chadwick,* 433 U.S. 1, 12, 97 S.Ct. 2476, 2484, 53 L.Ed.2d 538 (1977). We have upheld the warrantless search of a vehicle where "events preceding the search gave the officer probable cause to believe the truck contained illegal drugs." *United States v. Rodriguez–Pando,* 841 F.2d 1014, 1017 (10th Cir.1988).

■ Arzaga argues that because the police had time to procure a warrant to search Arzaga's motel room and automobile during their three-hour stakeout of Arzaga's motel room, their stop and search of Arzaga's vehicle without a warrant did not satisfy the automobile exception to the warrant requirement. That is, Arzaga would have us adopt a rule requiring the police to procure a search warrant, and conduct a search, at the very moment that mere suspicion ripens into probable cause.

This we are unwilling, and unable, to do. There are all kinds of perfectly legal reasons why police might choose to wait on a search warrant: previously unknown co-conspirators could enter an apartment, larger quantities of drugs might be brought inside, or the environment might be too threatening to the officers' safety. All such possibilities counsel against our adopting such a restrictive interpretation of the Fourth Amendment's warrant requirement.

In any event, our decision in *United States v. Crabb,* 952 F.2d 1245 (10th Cir.1991) (citing cases), where we held that once law enforcement agents have probable cause to believe that a vehicle contains contraband, their "time and opportunity to obtain a warrant are irrelevant, as constitutional analysis ends with finding probable cause," *Id.* at 1246, is dispositive. In that case, federal agents waited with the defendant in his motel room for three hours before executing a warrantless search of his automobile based solely on the officers' estimation that they had probable cause to believe the vehicle contained contraband.

Here, the district court found that the Oklahoma City Police had probable cause to believe that Arzaga was engaging in illicit drug transactions—based on the information received from the FBI—and that Arzaga's automobile was the most likely location of the contraband. Arzaga does not dispute that determination. Possessing probable cause, the police were under no obligation to obtain a warrant before searching Arzaga's automobile.

## C.

■ Arzaga also charges that the Government failed to inform him of its reliance on confidential informant information and that he, therefore, could not have objected before the district court as to the reliability of the informants. *Aguilar v. Texas,* 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964). The Government's position on appeal is that Arzaga has waived any such argument because FBI Agent Jose Contreras explicitly testified at the suppression hearing that information had been received from confidential informants which, in turn, created probable cause to search Arzaga's vehicle.

In fact, the transcript of the suppression hearing is replete with references to the confidential informants and the information they provided to the FBI. Although Arzaga cross-examined Agent Contreras about the information furnished by the informants, at no point before the district court did Arzaga dispute the fact that confidential informants had furnished the information to the FBI, nor did Arzaga contend that the informants were not reliable. Consequently, we reject

Arzaga's argument as we decline to entertain an issue not raised before the district court.

Accordingly, the stop and search of Arzaga's automobile did not violate the Fourth Amendment, and all evidence seized pursuant to that search was admissible.

### III

Because the district court did not err in denying Arzaga's motion to suppress, we will affirm Arzaga's conviction.

AFFIRMED.