**UNITED STATES of America, Plaintiff,**

v.

**Anthony ANDERSON, Defendant.**

**No. 95–40065–01–SAC.**

United States District Court,
D. Kansas.

Jan. 23, 1996.

Joseph D. Johnson, Joseph D. Johnson, Chtd., Topeka, KS, George O. Lawson, Jr., Derek M. Wright, Lawson & Thornton, Atlanta, GA, and Anthony Anderson, Inglewood, CA, for defendant.

Thomas G. Luedke, Office of United States Attorney, Topeka, KS, for the U.S.

## MEMORANDUM AND ORDER

CROW, District Judge.

On September 20, 1995, the grand jury returned a one count indictment charging the defendant, Anthony Anderson, with knowingly possessing with intent to distribute approximately six kilograms of a mixture or substance containing a detectable amount of cocaine hydrochloride. The substance alleged to be cocaine was apparently seized during a search of the vehicle driven by Anderson.

This case comes before the court upon the following pretrial motions filed by Anderson:

1. Defendant's motion to suppress (Dk. 15).

2. Defendant Anthony Anderson's Motion for Discovery (Dk. 22).

3. Defendant's motion for Disclosure (Dk. 23).

4. Defendant Anthony Anderson's Motion for Witness List or production of Witnesses and incorporated memorandum of law (Dk. 24).

5. Defendant Anthony Anderson's Motion for Transcription and production of grand jury testimony and brief in support (Dk. 25).

6. Defendant's motion and brief for early disclosure of Jencks Act material and memorandum of law in support thereof (Dk. 26).

The government has filed responses addressing Anderson's motions. *See* (Dk. 20 and 27).

On December 8, 1995, the court conducted a hearing on the defendant's motions. The court, having considered the arguments and briefs of counsel, the evidence presented at the December 8, 1995, hearing, and the applicable law, is now prepared to rule.

### Defendant's motion to suppress (Dk. 15).

On April 8, 1995, Anderson was driving eastbound on Interstate 70 in Saline County, Kansas. At approximately 11:20 a.m., Trooper David Heim observed Anderson driving eastbound. Trooper Heim stopped Anderson because Anderson was following another vehicle too closely. According to Anderson, Trooper Heim's stop was merely a pretext to conduct a search of his vehicle, a Chevy Suburban with California tags. Trooper Heim apparently only issued Anderson a warning for following too closely, but asked if he could search the vehicle, to which Anderson assented. During his search of the vehicle, Trooper Heim ultimately found six kilograms of cocaine in a secret compartment in the gas tank.

Anderson seeks to suppress the evidence on several grounds. Summarized, these are the alternative grounds for suppression:

1. No probable cause to stop Anderson's vehicle existed;

2. The stop of the vehicle was a pretextual stop motivated by an improper purpose;

3. No probable cause or reasonable suspicion existed to justify the continued detention of Anderson following the issuance of the warning;

4. Anderson's consent to search the vehicle was not voluntary;

5. No warrant to search the vehicle was obtained. The government opposes the defendant's motion, arguing that the search was not pretextual, that Anderson's consent to search was voluntary, and that there was nothing unlawful about the manner in which Anderson was stopped or his vehicle was searched. The government contends that no search warrant was necessary under the "automobile exception" to the Fourth Amendment.

To the extent that Anderson argued that the stop of his vehicle was pretextual, his motion to suppress was based upon the Tenth Circuit's decision in *United States v. Guzman*, 864 F.2d 1512 (10th Cir.1988). On December 5, 1995, in *United States v. Botero–Ospina*, 71 F.3d 783 (10th Cir.1995), the Tenth Circuit overruled in part its decision in *Guzman*. In light of this substantial departure from past precedent, the court provided each party an opportunity to file supplemental briefs in support of their respective positions. Each party subsequently filed supplemental briefs.

### Legal Standards

In general, there are three types of citizen-police encounters: (1) consensual encounters, which involve a citizen's voluntary cooperation with an official's non-coercive questioning and which are not seizures within the meaning of the Fourth Amendment; (2) investigative detentions or "Terry stops," which are seizures that are justified only if articulable facts and reasonable inferences drawn from those facts support a reasonable suspicion that a person has committed or is committing a crime; and (3) arrests, which are seizures characterized by highly intrusive or lengthy detention and which require probable cause to believe that the arrestee has committed or is committing a crime. *United States v. Seslar*, 996 F.2d 1058, 1060 (10th Cir.1993).

"A traffic stop is valid under the Fourth Amendment if the stop is based on an observed traffic violation or if the police officer has reasonable articulable suspicion that a traffic or equipment violation has occurred or is occurring." *United States v. Botero–Ospina*, 71 F.3d 783, 786 (10th Cir.1995). "Our sole inquiry is whether this particular officer had reasonable suspicion that this particular motorist violated any one of the multitude of applicable traffic and equipment regulations of the jurisdiction." *Id., quoting Delaware v. Prouse*, 440 U.S. 648, 661, 99 S.Ct. 1391, 1400, 59 L.Ed.2d 660 (1979). For purposes of Fourth Amendment analysis, it does not matter whether: (1) "the stop in question is

sufficiently ordinary or routine according to the general practice of the police department or the particular officer making the stop," *quoting United States v. Ferguson,* 8 F.3d 385, 391 (6th Cir.1993), *cert. denied,* — U.S. —, 115 S.Ct. 97, 130 L.Ed.2d 47 (1994); and (2) "the officer may have had other subjective motives for stopping the vehicle." *Botero–Ospina,* 71 F.3d at 787.[1]

▪ The law governing the conduct of an officer during a traffic stop is well-settled in the Tenth Circuit:

> An officer conducting a routine traffic stop may request a driver's license and vehicle registration, run a computer check, and issue a citation. When the driver has produced a valid license and proof that he is entitled to operate the car, he must be allowed to proceed on his way, without being subject to further delay by police for additional questioning.

[quoting *United States v. Fernandez,* 18 F.3d 874, 878 (10th Cir.1994).] *United States v. Gonzalez–Lerma,* 14 F.3d 1479, 1483 (10th Cir.1994) teaches that further questioning and the concomitant detention of a driver are permissible in either of two circumstances: (1) during the course of the traffic stop the officer acquires an objectively reasonable and articulable suspicion that the driver is engaged in illegal activity (*see, e.g., United States v. Soto,* 988 F.2d 1548, 1554 (10th Cir.1993); *United States v. Horn,* 970 F.2d 728, 732 (10th Cir.1992)) or (2) the driver voluntarily consents to the officer's additional questioning. In the first situation a Fourth Amendment seizure has taken place, but it is reasonable and consequently constitutional. In the second there is no seizure, and hence the Fourth Amendment's strictures are not implicated. But if neither of those factors is present, evidence derived from further questioning (or, a fortiori, from an ensuing search) is impermissibly tainted in Fourth Amendment terms.

*United States v. Sandoval,* 29 F.3d 537, 539–540 (10th Cir.1994); *see United States v. Lee,* 73 F.3d 1034, 1040 (10th Cir.1996).

**Voluntariness of Continued Encounter**

▪ *Florida v. Bostick,* 501 U.S. 429, 439, 111 S.Ct. 2382, 2389, 115 L.Ed.2d 389 (1991) has reconfirmed the Supreme Court's adherence:

> to the rule that, in order to determine whether a particular encounter constitutes a seizure, a court must consider all the circumstances surrounding the encounter to determine whether the police conduct would have communicated to a reasonable person that the person was not free to decline the officers' requests or otherwise terminate the encounter.

That totality-of-the-circumstances approach means that "[n]o single factor dictates whether a seizure has occurred" (*United States v. Houston,* 21 F.3d 1035, 1037 (10th Cir.1994)). In the context of traffic stops this Circuit has adopted as an indicium of a seizure the officer's taking of necessary documentation (driver's license and vehicle registration) from a driver, and we have also considered as a necessary (but not always sufficient) condition of the termination of that seizure the officer's return of such documentation—both of those rulings being based on the premise that the requisite consent is impossible because no "reasonable person" would feel free to leave without such documentation (*United States v. McKneely,* 6 F.3d 1447, 1451 (10th Cir.1993)).

After the point at which the driver has his or her other documentation back, the touchstone of our analysis is simply whether—adapting the language of *Bostick* to

---

1. In *Guzman,* the Tenth Circuit had defined a pretextual stop as one in which "the police use a legal justification to make the stop in order to search a person or place, or to interrogate a person, for an unrelated serious crime for which they do not have the reasonable suspicion necessary to support a stop." 864 F.2d at 1515. The test announced in *Guzman* for determining whether a stop was pretextual was " 'whether under the same circumstances a reasonable officer would have made the stop in the absence of the invalid purpose.' " *Id.* (*quoting United States v. Smith,* 799 F.2d 704, 709 (11th Cir.1986)).

In *Botero–Ospina* the Tenth Circuit abandoned the " 'would' or the 'usual practices' standard" as "[t]ime has proven the *Guzman* standard unworkable." *Botero–Ospina,* 71 F.3d at 786.

the circumstances of a traffic stop—the driver (*United States v. Werking*, 915 F.2d 1404, 1408 (10th Cir.1990)):

> has an objective reason to believe that he was not free to end his conversation with the law enforcement officer and proceed on his way.

Where such a belief is present based on the "objective" facts of the situation, a voluntary police-citizen encounter is said to arise (*see, e.g., McKneely*, 6 F.3d at 1451–53; *Werking*, 915 F.2d at 1409).

*Sandoval*, 29 F.3d at 540. *See Lee*, 73 F.3d at 1040 (The Tenth Circuit has "consistently held 'that an encounter initiated by a traffic stop may not be deemed consensual unless the driver's documents have been returned to him.' ") (quoting *United States v. Gonzalez–Lerma*, 14 F.3d 1479, 1483 (10th Cir.), *cert. denied*, —— U.S. ——, 114 S.Ct. 1862, 128 L.Ed.2d 484 (1994)).

### Reasonable Suspicion

■ Detention "can only be justified if specific and articulable facts and rational inferences drawn from those facts gave rise to a reasonable suspicion of criminal activity." *Sandoval*, 29 F.3d at 542, quoting *United States v. Fernandez*, 18 F.3d 874, 878 (10th Cir.1994).

### Consensual Searches

■ Under the Fourth and Fourteenth Amendments a search conducted without a warrant issued upon probable cause is *per se* unreasonable, subject only to a few specifically established and well-delineated exceptions. *Schneckloth v. Bustamonte*, 412 U.S. 218, 219, 93 S.Ct. 2041, 2043, 36 L.Ed.2d 854 (1973). A search authorized by consent is wholly valid and is a well-recognized exception to the prohibition against warrantless searches. 412 U.S. at 219, 93 S.Ct. at 2043. Voluntariness is a question of fact to be determined from the totality of all the circumstances. 412 U.S. at 227, 93 S.Ct. at 2047. The government has the burden of proving the voluntariness of the consent. 412 U.S. at 223, 93 S.Ct. at 2045; *United States v. Soto*, 988 F.2d 1548, 1557 (10th Cir.1993) ("The voluntariness of consent must be determined from the totality of the circumstances, and the government bears the burden of proof on the issue.").[2] The government "must demonstrate with 'clear and positive' testimony that consent was 'unequivocal and specific' and 'freely and intelligently' given." *United States v. Dewitt*, 946 F.2d 1497, 1500 (10th Cir.1991) (quoting *United States v. Abbott*, 546 F.2d 883, 885 (10th Cir.1977)), *cert. denied*, 502 U.S. 1118, 112 S.Ct. 1233, 117 L.Ed.2d 467 (1992). The government must also prove that the consent was given without duress or coercion, express or implied. *Id.*

The Tenth Circuit has developed a two-step inquiry to determine whether the government has sustained its burden of showing that the consent to search was voluntary.

> To admit evidence obtained from a search, wherein consent was given, the following must be found:
>
> (1) There must be a clear and positive testimony that consent was unequivocal and specific and freely given; and
>
> (2) The government must prove consent was given without duress or coercion, express or implied.

*United States v. Butler*, 966 F.2d 559, 562 (10th Cir.1992) (citing *United States v. Price*, 925 F.2d 1268, 1270–71 (10th Cir.1991)). "When making this determination, the court should not presume that the consent was either voluntary or involuntary." *Soto*, 988 F.2d at 1557.[3]

---

**2.** The government's "burden is heavier when consent is given after an illegal stop." *United States v. Fernandez*, 18 F.3d 874, 881 (10th Cir. 1994). "The government must prove that [the defendant's] consent to search is 'sufficiently an act of free will to purge the primary taint of the illegal [seizure], [or] it must be suppressed as fruit of the poisonous tree.' " *Id.* (quoting *United States v. Maez*, 872 F.2d 1444, 1453 (10th Cir. 1989)).

**3.** In its brief, the government cites *United States v. Corral*, 899 F.2d 991, 995 (10th Cir.1990), which sets forth a three-tiered inquiry for analyzing consent to search issues. Under the third tier·in *Corral*, the court must recognize a presumption against waiver of constitutional rights in analyzing the voluntariness of the consent to search. In *Price*, the Tenth Circuit held that the presumption against voluntary waiver of constitutional rights does not apply in consent to search cases. 925 F.2d at 1270. Prior to its decision in *Price*, the Tenth Circuit had included

## Automobile Searches

"It is well established that a warrantless search of an automobile based on probable cause does not violate the Fourth Amendment." *United States v. Arzaga,* 9 F.3d 91, 94 (10th Cir.1993). Therefore, "[a] vehicle which is lawfully stopped may be searched without a warrant if there is probable cause to believe it contains contraband or evidence of a crime." *United States v. Nicholson,* 17 F.3d 1294, 1297 (10th Cir.1994); see *United States v. Ross,* 456 U.S. 798, 809, 102 S.Ct. 2157, 2164, 72 L.Ed.2d 572 (1982) ("A warrantless search of an automobile is reasonable if there is probable cause to believe it contains contraband."). "Probable cause to search a vehicle is established if, under the 'totality of the circumstances' there is a 'fair probability' that the car contains contraband or evidence." *United States v. Nielsen,* 9 F.3d 1487, 1489–90 (10th Cir.1993) (emphasis omitted) (quoting *Illinois v. Gates,* 462 U.S. 213, 238, 103 S.Ct. 2317, 2332, 76 L.Ed.2d 527 (1983)). "The Supreme Court has explained that the warrantless search of an automobile is justified by the vehicle's inherent mobility and the diminished expectation of privacy which surrounds the automobile." *Arzaga,* 9 F.3d at 94 (citing *United States v. Chadwick,* 433 U.S. 1, 12, 97 S.Ct. 2476, 2484, 53 L.Ed.2d 538 (1977)). The Tenth Circuit has "upheld the warrantless search of a vehicle where 'events preceding the search gave the officer probable cause to believe the truck contained illegal drugs.'" *Arzaga,* 9 F.3d at 94 (quoting *United States v. Rodriguez–Pando,* 841 F.2d 1014, 1017 (10th Cir.1988)).

a "presumption against waiver" as part of the test for determining the voluntariness of a consensual search.

4. K.S.A. 8–1523(a) provides: "The driver of a motor vehicle shall not follow another vehicle more closely than is reasonable and prudent, having due regard for the speed of such vehicles and the traffic upon and the condition of the highway."

5. Prior to and during the stop of Anderson's vehicle, Trooper Heim activated a video camera. The camera is mounted in the center of Trooper Heim's vehicle. Anderson argues that the video camera recording clearly proves that Trooper Heim could not have observed him traveling too

## Findings of Fact and Conclusions of Law

On April 8, 1995, Anderson was driving eastbound on Interstate 70 in Saline County, Kansas. At approximately 11:20 a.m., Trooper David Heim observed Anderson driving eastbound. Because of concern for the safety of construction workers and persons traveling through construction zones, the Kansas highway patrol had increased monitoring of construction zones. Anderson's violation of the law took place in a construction zone that had been restricted to two lane, two-way traffic. Trooper Heim stopped Anderson because, in his opinion, Anderson was following another vehicle too closely. Following another vehicle more closely than is reasonable and prudent constitutes a violation of the laws of the State of Kansas. *See* K.S.A. 8–1523(a).[4] Trooper Heim's decision to stop Anderson's vehicle, a 1989 Chevrolet Suburban, was based upon his personal observation of Anderson's vehicle in relation to the preceding vehicle.[5] After being stopped, Anderson admitted to Trooper Heim that he had gotten too close to the vehicle in front of him when traffic "choked up a little bit." The court concludes that the initial stop of the vehicle was not a violation of the Fourth Amendment.

Upon stopping the vehicle, the driver identified himself as Anthony Anderson. The driver produced a California driver's license bearing the name Anthony Anderson. Trooper Heim asked Anderson to come back to his patrol car. Trooper Heim noticed that Anderson was wearing a pager. Trooper

closely, and hence, Trooper Heim could not lawfully have stopped him.

If the video camera were mounted in such a manner that it would have had the exact same vantage point as Trooper Heim, and were the video camera able to capture the identical images personally viewed by Trooper Heim, Anderson would be correct in arguing that the videotape undermines the credibility of Trooper Heim's testimony regarding his personal observations. The camera was not, however, mounted where Trooper Heim sat, nor was the camera able to capture the images viewed by Trooper Heim. The court credits Trooper Heim's testimony that from his vantage point as driver of the vehicle he was able to observe Anderson's vehicle traveling too close to the next vehicle.

Heim contacted the dispatcher to determining if Anderson's license was valid.

While in the patrol car, Anderson indicated to Trooper Heim that the Suburban was his uncle's vehicle. In response to Trooper Heim's query regarding his destination, Anderson indicated that he was going to Ohio State or Central State to visit a nephew attending school there. Anderson also indicated that he was going to apply for work as a truck driver.

Trooper Heim then exited the patrol car and went back to the Suburban to verify the vehicle identification number. While at the Suburban, Trooper Heim asked the other occupant of the vehicle, Francia Hurd, where she and Anderson were heading. Hurd was uncertain as to the couple's destination— possibly Alabama. Trooper Heim also noticed a cellular telephone and the smell of air fresheners. Trooper Heim knew that air fresheners and are often used by drug couriers to mask the odor of narcotics. Trooper Heim also knew that California is a large source of narcotics and that I–70 is a common route for the transportation of drugs.

Trooper Heim returned to his patrol car and began preparing a warning citation. Trooper Heim told Anderson that he could return to his car if he so chose. Anderson replied, "Well that's OK," and remained in the patrol car. At approximately 11:27, Trooper Heim handed Anderson a warning citation and returned Anderson his papers. After returning those documents, but while still in the patrol car, Trooper Heim then asked Anderson if he was transporting narcotics. Anderson replied that he was not. Trooper Heim asked Anderson if he could search the vehicle, to which Anderson replied "Yeah, well we're (sic) not drugs. I'm a commercial truck driver and I'm trying to fly with J.B. Hunt in Arkansas; she's 45 years old. If you want to scout around, fine." Trooper Heim then began a thorough search of the vehicle.

Based upon the evidence, the court concludes that at the time Trooper Heim asked Anderson if he were transporting narcotics, Anderson's encounter was a consensual one. Trooper Heim had given Anderson the warning and all of Anderson's paperwork. At that point, Anderson was free to leave without responding to Trooper Heim's questions. Nothing indicated by Trooper Heim through word or action would have lead a reasonable person to believe that they were not free to leave. Trooper Heim made it clear that the basis of the stop was for Anderson following too closely to another vehicle. Trooper Heim also made it clear that he was only going to issue Anderson a warning and that such a warning was simply that; unlike a citation for violating the law, the warning required no further action by Anderson. Anderson, of his own volition, had chosen to stay in the patrol car during the completion of the warning. Anderson had declined Trooper Heim's invitation to return to his own car. In short, Anderson was not unlawfully detained.[6]

Similarly, the court finds Anderson's consent to search the Suburban was voluntary under the totality of the circumstances.[7] Trooper Heim's simple request to search the vehicle was not accompanied by any threats or show of authority, and there is nothing indicating that the search was not voluntary.

During his search of the vehicle, Trooper Heim noticed mismatched screws in the back of the Suburban. Trooper Heim also noticed fresh paint, new hoses and clamps and fresh tool marks around the gas tank. Trooper Heim also tapped the gas tank and noticed a portion which he believed to be solid. Using a flexible scope, Trooper Heim looked into the gas tank. While using the scope, Trooper Heim notice a trap door in the top of the gas tank. At that point, Trooper Heim indicated to Anderson that it would be necessary to drop the gas tank in order to find out what was inside. At that point, Anderson attempted to withdraw his

---

6. In the alternative, the court finds that Trooper Heim had a reasonable, articulable suspicion justifying a brief detention of Anderson to ask if he were carrying narcotics.

7. Anderson voluntarily consented to the search of the Suburban and did not attempt to withdraw his consent until after the point in time Trooper Heim indicated that he intended to search the gas tank.

consent to search, indicating that Trooper Heim was about to exceed the scope of what he deemed reasonable. By that time, however, Trooper Heim believed that he had probable cause to arrest Anderson and Hurd.

The court finds no Fourth Amendment violation by Trooper Heim in searching the Suburban's gas tank without a search warrant. Following his discovery of what appeared to be a secret compartment, coupled with all of the other facts within his knowledge, Trooper Heim had probable cause to search the vehicle for contraband.

In sum, the court finds no Fourth Amendment violation. Consequently, Anderson's motion to suppress is denied.

### Discovery Motions

Defendant Anthony Anderson's Motion for Discovery (Dk. 22); Defendant's motion for Disclosure (Dk. 23); Defendant Anthony Anderson's Motion for Witness List or production of Witnesses and incorporated memorandum of law (Dk. 24); Defendant Anthony Anderson's Motion for Transcription and production of grand jury testimony and brief in support (Dk. 25); Defendant's motion and brief for early disclosure of Jencks Act material and memorandum of law in support thereof (Dk. 26).

■ The balance of Anderson's motions are motions for discovery. Although not raised by the government, Anderson has not complied with the procedural guidelines of this court regarding discovery under Fed. R.Crim.P. 16 and *Brady*. In pertinent part, this court's criminal procedural guidelines provide:

1.B. Prior to filing discovery requests or motions with the court based upon constitutional (e.g., *Brady* or *Giglio*) or statutory grounds (e.g., Federal Rule of Criminal Procedure 16), government counsel and defense counsel shall confer in an attempt to agree on a mutually acceptable pretrial exchange of information and discovery. If an agreement is reached, counsel for both parties shall sign and file with the court a notice or statement of their agreement. If

no agreement is reached, a motion for discovery may be filed. The motion shall disclose that counsel conferred and were unable to agree upon production of the requested information. The motion shall be made in compliance with the provisions of the Federal Rules of Criminal Procedure governing motion practice in criminal cases and in compliance with these procedural guidelines. The motion for discovery shall specify with as much certainty as possible the requested information and may be supported by affidavits filed with the motion.

None of Anderson's motions contain certification that the parties consulted and were unable to reach an agreement.[8] Therefore, Anderson's motions for discovery pursuant to Rule 16 and *Brady* could be denied on procedural grounds alone.

Notwithstanding this oversight, the court will consider Anderson's motions on the merits. In light of the government's response it appears that the majority of his requests are moot. To the extent that the government has not turned over the information the defendant seeks, it appears that the government's refusal is warranted under the rules governing discovery in criminal cases.

■ During the December 8, 1995, hearing, counsel for Anderson indicated that the primary request for discovery was limited to information related to records related to Trooper Heim. Anderson sought those records in part to apparently attempt to demonstrate that Trooper Heim's decision to stop his vehicle was pretextual. In light of the Tenth Circuit's decision in *Botero–Ospina,* the issue of whether Trooper Heim's decision to stop Anderson's vehicle was pretextual is no longer relevant to evaluating the lawfulness of the stop.

The court has considered all of Anderson's requests for discovery, but because the court deems the government's response adequate or appropriate, the court will make no effort to discuss each of Anderson's numerous requests in detail. The balance of this memo-

---

8. In fact, based upon the government's brief, it appears that the government has already turned

over many of the items sought by the defendant.

randum and order will, however, address some of Anderson's specific requests for discovery in greater detail.

### Defendant Anthony Anderson's Motion for Witness List or production of Witnesses and incorporated memorandum of law (Dk. 24).

█ Anderson seeks an order compelling the government to provide him with a list of all of the witnesses it intends to call at trial.[9] The government responds, indicating that it has agreed, pursuant to the reciprocal witness disclosure provision of the Omnibus Hearing Report, to disclose a list of its witnesses three days before trial. The defendant's motion is denied as moot.

### Defendant Anthony Anderson's Motion for Transcription and production of grand jury testimony and brief in support (Dk. 25).

Anderson seeks an order compelling the government to provide him with copies of the transcripts of all grand jury proceedings leading to his indictment. Anderson indicates that the transcripts are necessary for his pretrial preparation. Anderson wants all of the witness's testimony—not just the testimony relevant to the witness's trial testimony which must be produced under *Jencks. See* 18 U.S.C. § 3500. Anderson indicates that the court's failure to provide the transcripts prior to trial will impair his ability to plan trial strategy, "as well as evaluate the likelihood of a successful affirmative defense (such as entrapment)."[10] Anderson may also implicitly suggest that something may have been awry in the presentation of evidence to the grand jury, justifying his review of the transcripts to insure that his indictment was based upon reliable information.

The government opposes the request, arguing that Anderson has not demonstrated a particularized need warranting disclosure. "With respect to grand jury statements of witnesses, the government would agree to produce those statements that would relate to the witness's testimony at trail at least 5 days prior to trial."

### Legal Standards

"Since the 17th century, grand jury proceedings have been closed to the public, and records of such proceedings have been kept from the public eye." *Douglas Oil Co. v. Petrol Stops Northwest,* 441 U.S. 211, 219 n. 9, 99 S.Ct. 1667, 1673 n. 9, 60 L.Ed.2d 156 (1979). "The rule of grand jury secrecy was imported into our federal common law and is an integral part of our criminal justice system." *Id.* Grand jury secrecy is regarded as necessary to the proper functioning of the grand jury. *Id.*

In *Douglas,* the Supreme Court summarized the reasons necessitating grand jury secrecy:

"(1) To prevent the escape of those whose indictment may be contemplated; (2) to insure the utmost freedom to the grand jury in its deliberations, and to prevent persons subject to indictment or their friends from importuning the grand jurors; (3) to prevent subornation of perjury or tampering with the witnesses who may testify before [the] grand jury and later appear at the trial of those indicted by it; (4) to encourage free and untrammeled disclosures by persons who have information with respect to the commission of crimes; (5) to protect innocent accused who is exonerated from disclosure of the fact that he has been under investigation, and from the expense of standing trial where there was no probability of guilt."

---

**9.** "While a defendant in a non-capital case has no right to discover the lists of prospective government witnesses," *United States v. Metropolitan Enterprises, Inc.,* 728 F.2d 444, 451 (10th Cir. 1984), the court has discretion upon the showing of compelling need to grant a motion for discovery of the government's witness list. *United States v. Madeoy,* 652 F.Supp. 371, 375 (D.D.C. 1987), *aff'd.,* 912 F.2d 1486 (D.C.Cir.1990), *cert. denied,* 498 U.S. 1105, 111 S.Ct. 1008, 112 L.Ed.2d 1091 (1991); 8 James Wm. Moore, *Moore's Federal Practice* ¶ 16.02[2][c] (1995) (a

defendant has no absolute right to obtain the names of government witnesses in advance of trial, except in capital cases; however, the district court may compel the government to provide the defense with such a list).

**10.** The suggestion that entrapment is a viable defense in this case would appear to be spurious on its face. The defendant's counsel has apparently submitted a canned discovery motion, presumably filed in each and every case.

*Id.* at 219 n. 10, 99 S.Ct. at 1673 n. 10 (quoting *United States v. Rose,* 215 F.2d 617, 628–629 (3rd Cir.1954)).

█ Fed.R.Crim.P. 6(e) codifies the requirement that grand jury activities generally be kept secret. "Despite the strong policy of maintaining the secrecy of grand jury proceedings, in certain situations disclosure of grand jury minutes and transcripts is appropriate where justice demands." *United States v. Pottorf,* 769 F.Supp. 1176, 1180 (D Kan.1991). Rule 6(e)(3) contains the exceptions to the general rule of secrecy. Rule 6(e) provides, in pertinent part:

(C) Disclosure otherwise prohibited by this rule of matters occurring before the grand jury may also be made—

(i) when so directed by a court preliminarily to or in connection with a judicial proceeding;

(ii) when permitted by a court at the request of the defendant, upon a showing that grounds may exist for a motion to dismiss the indictment because of matters occurring before the grant jury;

. . . .

If the court orders disclosure of matters occurring before the grand jury, the disclosure shall be made in such manner, at such time, and under such conditions as the court may direct.

*See also* 18 U.S.C. § 3500 (The Jencks Act).

█ The decision of whether grand jury transcripts should be released is committed to the sound discretion of the district court. *In re Lynde,* 922 F.2d 1448, 1451 (10th Cir.1991) (quoting *Douglas Oil,* 441 U.S. at 211, 99 S.Ct. at 1667). To be entitled to production, the defendants must show a "particularized need" for the documents that outweighs the public policy of grand jury secrecy. *See United States v. Warren,* 747 F.2d 1339, 1347 (10th Cir.1984).

█ A general claim that the grand jury transcript possibly contains exculpatory evidence does not suffice. *In re Lynde,* 922 F.2d 1448, 1454 (10th Cir.1991). Particularized need is more than a wish to go fishing for useful material. *U.S. v. Kim,* 577 F.2d 473, 478 (9th Cir.1978); *see Cullen v. Margiotta,* 811 F.2d 698, 715 (2nd Cir.) ("Requests for wholesale disclosures should generally be denied. . . ."), *cert. denied,* 483 U.S. 1021, 107 S.Ct. 3266, 97 L.Ed.2d 764 (1987). The scope and breadth of the defendants' request indicates their purpose here is little more than to go on a fishing expedition for anything that might help them.

█ The rule is as exacting when the defendant asks for the protected materials in order to challenge the propriety of the grand jury proceedings. "Before disclosure of the grand jury transcripts, which would corroborate the Defendants' arguments can be ordered, the Defendants must offer evidence of a 'substantial likelihood of gross or prejudicial irregularities in the conduct of the grand jury.'" *U.S. v. Cannistraro,* 800 F.Supp. 30, 50–51 (D.N.J.1992) (quoting *U.S. v. Budzanoski,* 462 F.2d 443, 454 (3rd Cir.), *cert. denied,* 409 U.S. 949, 93 S.Ct. 271, 34 L.Ed.2d 220 (1972)). Mere speculation over what may have occurred is not enough to meet this burden or to overcome the presumption of regularity attached to grand jury proceedings. *U.S. v. Santoro,* 647 F.Supp. 153, 173 (E.D.N.Y.1986) (noted the Catch–22 dilemma inherent in this rule but followed it nonetheless), *aff'd.,* 880 F.2d 1319 (2nd Cir.1989).

In the case at bar, Anderson has fallen far short of demonstrating a particularized need for the grand jury transcripts. A simple desire for the grand jury transcripts is insufficient to require disclosure of the grand jury transcripts. This motion is denied.

**Defendant's motion and brief for early disclosure of Jencks Act material and memorandum of law in support thereof (Dk. 26).**

Anderson seeks early, pretrial disclosure of Jencks material. In addition, in paragraph # 5 of his motion, Anderson seeks a plethora of materials regarding Trooper Heim. The information would presumably be relevant for purposes of evaluating Trooper Heim's propensity to make pretextual stops. As discussed above, this information is no longer relevant to the determination of whether the stop of Anderson's vehicle was lawful. Anderson argues that the failure to provide such information pretrial will inevitably lead to lengthy delays during trial.

The government responds, indicating that it has provided all of the information requested by Anderson in paragraphs 1–4, with the exception of the grand jury transcripts, which it has agreed to turn over five days before trial. The government opposes the requests made in paragraph 5 of Anderson's motion, arguing that they are overbroad and irrelevant.

This motion is denied in part as moot and denied in part on the merits. The information sought by Anderson in paragraph # 5 of his motion does not appear to be Jencks material. Moreover, the request is for information of little or no relevance to the issues in this case.

IT IS THEREFORE ORDERED that Anderson's motion to suppress (Dk. 15) is denied.

IT IS FURTHER ORDERED that Defendant Anthony Anderson's Motion for Discovery (Dk. 22) is denied in part as moot and denied in part upon the merits.

IT IS FURTHER ORDERED that Defendant's motion for Disclosure of Exculpatory Evidence (Dk. 23) is denied in part as moot and denied in part on the merits.

IT IS FURTHER ORDERED that Defendant Anthony Anderson's Motion for Witness List or production of Witnesses and incorporated memorandum of law (Dk. 24) is denied as moot.

IT IS FURTHER ORDERED that Defendant Anthony Anderson's Motion for Transcription and production of grand jury testimony and brief in support (Dk. 25) is denied.

IT IS FURTHER ORDERED that Defendant's motion and brief for early disclosure of Jencks Act material and memorandum of law in support thereof (Dk. 26) is denied in part as moot and denied in part upon the merits.